*Starr Neal, et al. v. Baltimore City Board of School Commissioners*, No. 21, September Term, 2019.  Opinion by Getty, J.

**SOVEREIGN IMMUNITY STATUTORY WAIVER—INDEMNIFICATION**

The Court of Appeals held that for the purpose of indemnifying a defendant county school board employee, the plain language of Courts and Judicial Proceedings Article § 5-518 requires joinder of a county board of education in the litigation at all times, even if the board has for all other purposes been substantively dismissed.

IN THE COURT OF APPEALS
OF MARYLAND

No. 21

September Term, 2019

_____

STARR NEAL, et al.

v.

BALTIMORE CITY BOARD OF SCHOOL
COMMISSIONERS

_____

Barbera, C.J.
McDonald,
Watts,
Hotten,
Getty,
Booth,
Greene, Clayton, Jr.,
(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Getty, J.

_____

Filed: February 28, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

As every bleacher fan and every Monday morning quarterback knows, it is easy to second guess any given situation.

Judge Marvin H. Smith, *Wooddy v. Mudd*, 258 Md. 234, 251 (1970).

In executing his trial strategy in a case against the Baltimore City Board of School Commissioners (the "Board") for an incident involving a school police officer, Plaintiffs' counsel made the decision to not appeal the summary judgment dismissal of the Board from the case and to avoid joinder of the Board until after the trial's conclusion. That decision was the result of counsel's misunderstanding of § 5-518 of the Courts and Judicial Proceedings Article ("CJ"), (1990, 2013 Repl. Vol.) and the Maryland Rules of Civil Procedure. Section 5-518 requires joinder of a county school board to an action against a county board employee that alleges damages resulting from a tortious act or omission committed by the employee in the scope of employment. Now, from the post-judgment vantage point of a Monday morning quarterback, the parties dispute whether the school board in this case is liable for a judgment against its employee when the board was dismissed from the case prior to trial.

We hold that even if a board is entitled to substantive dismissal from a case by summary judgment or otherwise, the plaintiffs are required under § 5-518 to keep the board as a party—or request that it be brought back into the case—in order for the board to be required to indemnify an employee. In the event a board is dismissed, the plain language of § 5-518 requires a plaintiff to (1) request that a board be brought back into a case for the purposes of indemnification; or (2) at the appropriate time, appeal a circuit court order that

otherwise dismisses a board prior to or during trial. Plaintiffs' counsel below did not properly follow the plain language directives of § 5-518 either by requesting that the Board be brought back in after summary judgment or by appealing the summary judgment ruling. Due to these § 5-518 procedural errors, the Board is not required to satisfy the judgment.

## BACKGROUND

### A.    *Courts and Judicial Proceedings Article § 5-518.*

This dispute is grounded in a fundamental disagreement about the operation of § 5-518 in the context of mandatory joinder. We start by noting that the discussion in this opinion is limited to the application of § 5-518 to "county board employees." The statute treats differently "board members" and "volunteers" in ways that are beyond the scope of this opinion.

At the relevant time,[1] § 5-518 provided:

(b) A county board of education, described under Title 4, Subtitle 1 of the Education Article, may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self-insured or a member of a pool described under § 4-105(c)(1)(ii) of the Education Article, above $100,000.

(c) A county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less.

---

[1] In 2016, the General Assembly amended § 5-518, increasing the extent of the waiver of sovereign immunity to reach claims up to $400,000. 2016 Md. Laws, ch. 680 §§ 1, 3. The Act took effect October 1, 2016 and is "construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any cause of action before the effective date of [the] Act." *Id.* §§ 2, 3. The relevant events in this case occurred in 2014 and the complaints were filed in April 2016, therefore we apply the law as it existed before Chapter 680 became effective.

2

(d)(1) The county board shall be joined as a party to an action against a county board employee . . . that alleges damages resulting from a tortious act or omission committed by the employee in the scope of employment . . . .

(2) The issue of whether the county board employee acted within the scope of employment may be litigated separately.

* * *

(e) A county board employee acting within the scope of employment, without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, including damages that exceed the limitation on the county board's liability.

* * *

(h) Except as provided in subsection (e) . . . of this section, a judgment in tort for damages against a county board employee acting within the scope of employment . . . shall be levied against the county board only and may not be executed against the county board employee, the county board member, or the volunteer personally.

CJ § 5-518.

The core of the statutory scheme is § 5-518(c), which makes a county school board potentially liable through a limited waiver of sovereign immunity. The Court recently made clear that a county school board is, in certain contexts, an arm of the State. *See Donlon v. Montgomery Cty. Pub. Sch.*, 460 Md. 62, 80–82 (2018). Sovereign immunity is one such context in which a county school board is considered an arm of the State. *Id.* at 80–81, 86–88, 94; *Beka Indus., Inc. v. Worcester Cty. Bd. of Educ.*, 419 Md. 194, 210 (2011). The State and its agents have sovereign immunity from common law tort actions except to the extent that the Legislature has waived that immunity. *Estate of Burris v. State*, 360 Md. 721, 736 (2000) (citing *Kee v. State Highway Admin.*, 313 Md. 445, 455

3

(1988)). Absent a statutory waiver, therefore, county school boards and their employees and agents have complete immunity from tort claims. Section 5-518(c) provides a statutory waiver for claims up to, at the relevant time, $100,000. Section 5-518(b) provides that county school boards maintain complete sovereign immunity for claims above that amount.

Section 5-518(d) requires joinder of a county school board in an action against any board employee "that alleges damages resulting from a tortious act or omission committed by the employee in the scope of employment." CJ § 5-518(d)(1). In this context, the purpose of mandatory joinder is to place the board on notice that it must satisfy a judgment against an employee. Notably, as to joinder, § 5-518(d)(1) does not have any qualified language—rather it has mandatory language: the board "*shall* be joined" in any action against a board employee where tortious acts or omissions within the scope of employment allegedly damaged the plaintiff. CJ § 5-518(d)(1) (emphasis added).

Even if the board is properly joined, its responsibility to satisfy a judgment depends on "whether the county board employee acted within the scope of employment." CJ § 5-518(d)(2). Such a question may be litigated separately from the underlying action. *Id.*

Sections 5-518(e) and (h) proceed to lay out protections for board employees. First, a board employee, acting within the scope of her employment, is shielded from personal liability if she was not acting with malice or gross negligence, regardless of the amount of damages. CJ § 5-518(e). Second, where the employee acted without malice or gross negligence, any judgment against a county board employee acting within the scope of employment "*shall* be levied against the county board *only* and *may not* be executed against the county board employee." CJ § 5-518(h) (emphasis added). Thus, in those

4

circumstances, a judgment may "be entered against both the employee and the county board of education, but the judgment may be levied and executed against the county board of education only." *Bd. of Educ. v. Marks-Sloan*, 428 Md. 1, 29 (2012).

## B. The Assaults.

A violent altercation occurred at the Vanguard Collegiate Middle School ("VCMS"), a Baltimore City Public School, on October 28, 2014. The facts presented at trial focused on the conduct of a school police officer at VCMS, Officer Lakeisha Pulley.[2] The entire encounter was recorded on school security cameras and the video was presented at trial.

During a class change, Officer Pulley verbally and physically assaulted three students, Starr Neal, Ty'llah Neal, and Diamond McCallum (the "Students").[3] In the initial encounter, a verbal altercation between Officer Pulley and Starr Neal turned physical. As Starr Neal walked by, Officer Pulley reached out for Starr Neal, grabbed her by the hair and pushed her against a window. Starr Neal struggled with Officer Pulley as Officer Pulley hit her and directed pepper spray at her face. When Ty'llah Neal approached the altercation to intervene, Officer Pulley hit Ty'llah Neal and pushed her into an exterior door. A third student, Diamond McCallum, approached the fray and physically struck Officer Pulley in the head and neck area. Officer Pulley released her grip on Starr Neal's

---

[2] The Court of Special Appeals spells Officer Pulley's first name "Lakisha." The spelling in this opinion relies upon the spelling in the complaints below.

[3] On September 25, 2015, Officer Pulley pleaded guilty to three counts of second-degree assault.

5

hair and chased Diamond McCallum down the hall. As Diamond McCallum backed away, Officer Pulley struck her three times in the head with an expandable baton. Officer Pulley then retreated and the altercation ended when Diamond McCallum withdrew into an office and a VCMS teacher physically restrained Starr Neal and Ty'llah Neal.

## C.    *The Civil Case.*

The parents and guardians of the Students filed three nearly identical complaints in the Circuit Court for Baltimore City against Officer Pulley and the Board.[4] According to the Students' complaints, there was no provocation by the Students and the entire altercation occurred for "no apparent or viable" reason. The Students brought four intentional tort claims and two constitutional claims: (1) false imprisonment; (2) malicious prosecution; (3) false arrest; (4) intentional infliction of emotional distress; (5) violation of Article 26 of the Maryland Declaration of Rights; and (6) violation of Article 24 of the Maryland Declaration of Rights. The Students also brought claims of assault and battery against Officer Pulley and a claim of negligent hiring, retention, supervision and credentialing against the Board. Upon the Board's motion, the circuit court dismissed with prejudice the intentional infliction of emotional distress and negligent hiring claims.

---

[4] The Students also named as defendants the City of Baltimore, the Baltimore City Public School System, the Baltimore City School Police Force, Chief Marshall T. Goodwin of the Baltimore City School Police Force, Gregory E. Thornton, the Chief Executive Officer of Baltimore City Public Schools, and Mr. Charley Serrida, a teacher at VCMS ("Serrida" is also spelled "Surida" in various court documents). Each of those defendants was dismissed or awarded judgment in rulings that are not relevant to this appeal.

### 1. *The Summary Judgment Stage*

After discovery, the Board filed a motion for summary judgment that relied upon, among other things, the statutory immunity provided by § 5-518. Specifically, the Board argued that (1) if Officer Pulley was acting within the scope of employment, she had immunity both as a police officer and under § 5-518(e) and, therefore, had no liability by which the Board could be held responsible; and (2) if Officer Pulley was acting outside the scope of her employment or committed an intentional tort, the Board was immune to liability under § 5-518. The Board also argued that it completely escaped liability if there was a finding that Officer Pulley acted with malice because such malicious actions took the claims outside the Board's potential responsibility under § 5-518.

In its written motion for summary judgment, the Board cited § 5-518 numerous times for the contention that it could not be responsible for damages or indemnification. Curiously, however, the Students' response failed to dispute the Board's interpretation of the statute or even cite § 5-518. The Students instead argued that the Board could be held responsible under respondeat superior because (1) the Board ratified Officer Pulley's tortious actions when it upheld the Students' suspensions; and (2) the "custom or policy" of the Board caused the constitutional violations.

The circuit court entered orders granting the Board's motion for summary judgment and dismissed with prejudice all the claims against the Board. The court also dismissed with prejudice several of the claims against Officer Pulley, but left pending certain intentional tort claims and the claim that she violated the Students' rights under Article 24 of the Maryland Declaration of Rights. In coming to these conclusions, it is unclear

7

whether the court considered the implications of the Board's indemnification status under § 5-518 because the orders did not explain the bases of the decisions.

2. *The Trial*

The Students presented their case to a jury over the course of three days in September 2017. As a result of its dismissal by summary judgment, the Board was not party to and did not participate in the trial. During trial, the Students dropped their intentional tort claims and proceeded only with the Article 24 claim. Counsel for Officer Pulley, "mindful of" § 5-518, requested instructions and a special verdict sheet with findings not only on the constitutional violation but also on whether such violation was the result of malicious or grossly negligent conduct. According to Officer Pulley's counsel, a finding on malice would have determined who was liable to satisfy a possible judgment:

> **[Officer Pulley's Counsel]:** [I]f the[ constitutional violations] were committed with malice or gross negligence, then my client, Officer Pulley, has liability. If they were committed without malice or gross negligence then the County Board in this case, the Baltimore City Board of School Commissioners has liability.

The Students objected to, and the court struck, the special instructions and special verdict sheet because malice was not an element of the claims currently before the jury. The parties did, however, stipulate that Officer Pulley was acting within the scope of her employment during the altercation. At the conclusion of trial, the jury found that Officer Pulley violated the rights of each of the students and awarded damages of $150,000 to Starr Neal, $100,000 to Diamond McCallum, and $30,000 to Ty'llah Neal. Even after obtaining a final judgment, it is unclear whether Students' counsel appreciated the indemnification status of

8

the Board because counsel did not, at any stage of the litigation, appeal the earlier order dismissing the Board from the case.[5]

### 3. *The Motions to Enforce the Judgments*

Six weeks later, the Students asked the Board by email to satisfy the three judgments entered against Officer Pulley. Counsel for the Board responded in a one-line email: "[The Board] is not paying. [The Board] was out of the case and has no legal obligation to pay." A few hours later, the Board sent another email warning Students' counsel that the Board would seek sanctions pursuant to Maryland Rule 1-341 if the Students initiated any legal proceedings seeking any payment from the Board. The threat fell on deaf ears as the Students' counsel filed a motion to enforce the judgment that same week. Despite making no argument under § 5-518 during the summary judgment stage, the Students now argued that the Board was obligated to satisfy the judgments pursuant to § 5-518 because Officer Pulley committed her tortious conduct within the scope of her employment.

Although the initial complaints alleged malice or gross negligence, the Students now, for the first time, contended that the tortious conduct was committed without malice or gross negligence. The Students also argued that "the statute forbids the[m] from levying the judgment against Defendant Pulley personally" based on their stipulation that Officer Pulley acted within the scope of her employment and their new concession that she acted without malice or gross negligence.

---

[5] Nor did Students' counsel, at any point, request that the circuit court exercise its discretion to direct entry of a partial final judgment under Maryland Rule 2-602(b).

At the hearing on the motion to enforce the judgments, the Students' counsel conceded that he had made a strategic decision to proceed at trial only on the Article 24 counts to thus avoid arguing that Officer Pulley acted with malice. According to counsel, he did so "specifically with an eye towards" later establishing the Board's responsibility to indemnify Officer Pulley under § 5-518. Counsel interpreted § 5-518 to mean that "if a school board employee does have malice, then the schools may not have to indemnify them." Thus, as a trial strategy, the Students' counsel proceeded only with the Article 24 claim because, unlike the common law intentional torts, the constitutional claim did not require proof of malice. Counsel thus acknowledged that his trial strategy was "to eliminate the risk to [the Students] that [they] would receive a judgment wherein the Defendant Pulley would have committed malice . . . and then [the] school system wouldn't have to pay because [the Students] viewed Officer Pulley as an insolvent defendant."

The Board argued, as it did in the prior emails to Students' counsel, that it was not obligated to pay the judgments because it had been completely removed from the case: summary judgment was entered in its favor, all claims against it were dismissed with prejudice, and the Students failed to seek reconsideration or appeal that judgment. As such, the Board contended that (1) the Students' claim was barred by res judicata and collateral estoppel; and (2) the entry of summary judgment was premised on Officer Pulley having acted with malice "and/or" gross negligence, therefore liability could not be revived against the Board due to the Students' change in theory at trial, during which the Board was absent.

In a one-page order, the circuit court rejected the Board's position and granted the Students' motion to enforce judgments. The Board filed a timely notice of appeal.

*4.      The Court of Special Appeals*

In the Court of Special Appeals, the dispute centered on whether the grant of summary judgment in favor of the Board acted as a res judicata bar to the Students' later-filed motion to enforce. The Students argued that res judicata did not apply because the circuit court's entry of summary judgment applied only to their claims against the Board based on direct liability and common law respondeat superior liability. Thus, they asserted, their indemnification claim under § 5-518 is an entirely separate claim that was not at issue on summary judgment. The Court of Special Appeals, in a well-reasoned unreported opinion, disagreed and held that the Students' motion to enforce was barred by res judicata. *Balt. City Bd. of Sch. Comm'rs v. Neal*, No. 2366, Sept. Term, 2017, 2019 WL 855642 (Md. Ct. Spec. App. Feb. 21, 2019).

After parsing out in great detail the plain language requirements under § 5-518, the Court of Special Appeals discussed *Board of Education v. Marks-Sloan*, 428 Md. 1 (2012), in which this Court explained that the proper procedure under § 5-518 is for a "plaintiff to sue both the county board and its employee, to obtain a judgment against both, and then to satisfy the judgment against the board alone." *Neal*, 2019 WL 855642, at *6. Based on the requirements laid out in § 5-518 and *Marks-Sloan*, the Court of Special Appeals held

> that the Students' claims that the Board was responsible for indemnification under § 5-518 were included in their initial complaints and that those claims were resolved by the circuit court's awards of summary judgment in favor of the Board and dismissals with prejudice of all claims against the Board. That is based on (1) the statutory scheme, which requires joinder of the Board for the purpose of the indemnification claim; (2) the language of the Students' complaints against the Board, which sought to hold the Board responsible for damages based on the actions of Officer Pulley; and (3) the actual arguments made on summary judgment, in which the Board sought judgment based on

11

the absence of any potential obligation under § 5-518 and the plaintiffs did not contest that claim.[6]

*Neal*, 2019 WL 855642, at *11.

In dicta, the Court of Special Appeals addressed "malice" under § 5-518 in a comprehensive footnote. As the court noted, both parties seemingly accepted that liability of county boards and liability of county board employees are mutually exclusive. The Board's belief therefore, that a board has no liability if its employee acted with malice or gross negligence, compelled the Board's position on summary judgment. Similarly, the Students' trial strategy not to argue that Officer Pulley acted with malice was based on this same interpretation of the statute. Although the intermediate appellate court had no need to clarify the statutory language, it noted that "the parties' interpretation is at least arguably in tension with the plain language of" § 5-518. *Id.* at *5 n.6.

---

[6] Because the intermediate appellate court concluded on res judicata grounds, it did not address the Board's alternative claims

> that the circuit court erred: (1) in entering a judgment against the Board even though it was not "joined" as a party at trial; (2) in entering a judgment against the Board even though there had been no determination binding as to the Board that Officer Pulley's tortious acts were undertaken within the scope of her employment and without malice or gross negligence; and (3) in determining that the Board was responsible for the entire amount of the Students' combined judgments against Officer Pulley even though its liability under § 5-518 was limited, the Board contends, to $100,000 per occurrence.

*Neal*, 2019 WL 855642, at *3 n.3. Those grounds are not relevant to this appeal.

The Students filed a petition for writ of certiorari which we granted on June 7, 2019. *Neal v. Balt. City Bd. of Sch. Comm'rs*, 464 Md. 9 (2019). They presented two questions for our review, which we have consolidated and rephrased:[7]

> In order to force a county school board to indemnify a judgment against a county board employee, does the mandatory joinder requirement under § 5-518 of the Courts & Judicial Proceedings Article require a county board be joined as a party throughout the entire litigation?

For the reasons that follow, we answer in the affirmative. A judgment on the direct claims against a county board employee requires a plaintiff to affirmatively enforce the board's statutory obligation to indemnify their employee against damages by including them in all stages of the litigation. Where a county board has been removed from a case, the plain language of § 5-518 requires a plaintiff to (1) request that the board be brought back into a case; or (2) at the appropriate time,[8] appeal a circuit court order that otherwise dismisses a board prior to or during trial. The Students' counsel below did not properly follow the plain language directives of § 5-518 either by requesting that the Board be brought back in after summary judgment or by appealing the circuit court's summary

---

[7] The exact questions presented were:

1. Did [the Court of Special Appeals] err in holding that the trial court's order granting a Motion to Enforce Judgments against a school board pursuant to [CJ] § 5-518 . . . was barred by res judicata?

2. May a judgment solely against a school board employee be levied against a school board pursuant to CJ[] § 5-518?

[8] Such an appeal, of course, is subject to the Final Judgment Rule. CJ § 12-301; *see Monarch Acad. Balt. Campus, Inc. v. Balt. City Bd. of Sch. Comm'rs*, 457 Md. 1, 41–42 (2017) ("[A] party may generally appeal only from 'a final judgment entered in a civil or criminal case by a circuit court.'" (quoting CJ § 12-301)).

judgment ruling. Due to the Students' § 5-518 procedural errors, the Board is not required to satisfy the judgments against Officer Pulley. Such a statutory failure foregoes the need to apply the principles of res judicata. As such, we affirm the judgment of the Court of Special Appeals on statutory grounds.

## STANDARD OF REVIEW

The parties agree that Officer Pulley was acting within the scope of her employment with the Board at the time of the incident. The Students no longer allege that Officer Pulley was acting with malice or gross negligence in causing the Students' injuries.[9] The only issue before the Court is a matter of statutory interpretation.

In statutory interpretation cases, the Court's primary goal is to ascertain the purpose and intention of the General Assembly when it enacted the statutory provisions. *Wash. Gas Light Co. v. Md. Pub. Serv. Comm'n*, 460 Md. 667, 682 (2018) (citing *Shealer v. Straka*, 459 Md. 68, 84 (2018)). Within the context of statutory interpretation,

> [t]his Court provides judicial deference to the policy decisions enacted into law by the General Assembly. We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.

*Brown v. State*, 454 Md. 546, 550–51 (2017) (citing *Phillips v. State*, 451 Md. 180, 196–97 (2017)).

---

[9] As discussed below, the parties apparently misunderstood how a finding of "malice" relates to the application of § 5-518.

The Court's inquiry is not limited to the particular statutory provisions at issue on appeal. Rather, "[t]his Court may also analyze the statute's 'relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.'" *Blackstone v. Sharma*, 461 Md. 87, 114 (2018) (quoting *Kaczorowski v. Mayor & City Council of Balt.*, 309 Md. 505, 515 (1987)).

Although not required, it is often prudent to examine the legislative history to confirm that our plain language interpretation of a statute is correct. *See, e.g.*, *Brown*, 454 Md. at 551 ("Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." (quoting *Phillips*, 451 Md. at 197)); *Bd. of Educ. of Balt. Cty. v. Zimmer-Rubert*, 409 Md. 200, 215 (2009); *Kramer v. Liberty Prop. Trust*, 408 Md. 1, 22 (2009).

## DISCUSSION

This appeal presents the Court with the opportunity to clarify the directives of § 5-518. The Students argue that a judgment issued against a school board employee may be levied on the school board regardless of the party-status of the school board. Thus, the Students aver that formal non-joinder of the Board was not fatal to their case and the Board is still bound by the judgment against Officer Pulley. The Board responds that it is not the "insurer" of claims against a board employee.

The only determinative question before us is whether the Students may enforce a claim for indemnification against the Board despite entry of summary judgment in favor of the Board. We first turn to *Marks-Sloan*, in which the Court extensively analyzed § 5-518.

## A. Board of Education of Prince George's County v. Marks-Sloan.

In *Marks-Sloan*, the Court sought to resolve, first, whether § 5-518 provides for indemnification or immunity for county board of education employees, and, second, whether the requirement that the board "satisfy any judgment" therefore violated the exclusivity rule of the Workers' Compensation Act. Because the Court determined that the statute was ambiguous on these questions, we took a three step approach: first, we looked to the legislative history of the statute; second, we considered the statutory scheme as a whole; and third, we compared § 5-518 to the Maryland Tort Claims Act ("MTCA"), Maryland Code (1984, 2014 Repl. Vol., 2019 Supp.), § 12-101 *et seq.* of the State Government Article, and the Local Government Tort Claims Act ("LGTCA"), Maryland Code (1987, 2013 Repl. Vol., 2019 Supp.), § 5-301 *et seq.* of the Courts and Judicial Proceedings Article. To the first question, we held that § 5-518 "contains an indemnification provision that allows an injured party to bring a tort suit against the county board of education employee who caused the injury." *Marks-Sloan*, 428 Md. at 13. We concluded that the General Assembly did not intend to provide county board employees with an immunity from suit.

The Court succinctly described the required procedures under § 5-518: (1) a suit may be brought directly against a board employee; (2) "a county board of education *must*

16

be joined as a party to an action against a county board employee who has committed a tortious act or omission within the scope of his or her employment"; (3) "[a] judgment may then be entered against both the employee and the county board of education"; but (4) the judgment may only be levied and executed against the board. *Id.* at 28–29 (emphasis added).[10]

The Court summarized the § 5-518 procedure concisely:

Tort suits may be brought against county board employees and judgments may be entered against them. The county board of education must be joined as a party to the tort action in situations where the employee has acted within the scope of employment without malice or gross negligence. If a judgment is entered against the employee and the county board, the county board alone is responsible for satisfying the judgment, as county board employees may not be held personally liable in tort for damages.

*Id.* at 32.

---

[10] *Marks-Sloan* explains the statutory definition of the terms "levied" and "executed":

The statute does not define the terms "levied" and "executed[.]" To determine the ordinary meanings of those words, we find it helpful to consult their dictionary definitions. *Black's Law Dictionary* defines "levy" as "[t]o take or seize property in execution of a judgment[.]" *Black's Law Dictionary* 927 (8th ed. 2004). The term "execute" is defined as "[t]o enforce and collect on (a monetary judgment)[.]" *Black's Law Dictionary* 609 (8th ed. 2004). The import of these words, read in connection with CJ § 5-518(h), is that a judgment may be entered against a county board employee, but the collection of that judgment may be against the county board only. That interpretation is consistent with CJ § 5-518(e), which indicates that a county board employee is not personally liable for damages in tort.

428 Md. at 28 (alteration in original) (citation omitted).

The Court has therefore contemplated and made clear the procedures under § 5-518. A plaintiff must sue both the county board and its employee, obtain a judgment against both, and satisfy the judgment against the board alone.[11]  In *Marks-Sloan*, that is exactly what the plaintiff did.  There, the plaintiff and the tortfeasor, both board employees, were involved in an automobile accident.  After the Workers' Compensation Commission ordered the board to pay compensation to the plaintiff, the plaintiff filed a complaint in the Circuit Court for Prince George's County, naming the tortfeasor-employee, the board, and Prince George's County as defendants.  The board successfully moved for dismissal based on the exclusivity provision of the Workers' Compensation Act,[12] but the circuit court "directed that [the board] 'remain a party in [the] case for purposes of any potential indemnification . . . required under [§ 5-518(h)].'" *Id.* at 12.  After a series of motions and responses, the circuit court entered judgment against both the tortfeasor-employee and the board, later adding the stipulation that the tortfeasor-employee be dismissed.  This, we held in *Marks-Sloan*, satisfied the directives of § 5-518.

The Students in the instant case did not satisfy the directives of § 5-518.  After the Board successfully moved for dismissal, the Students did not request that the Board "remain a party in [the] case for purposes of any potential indemnification." *See Marks-*

---

[11] Although, as discussed below, if the employee acted with malice or gross negligence, plaintiffs may recover from the employee as well.

[12] "The purpose of the exclusivity rule is to ensure swift compensation to the injured employee and to prevent a double recovery, through a workers' compensation award and a tort judgment, from an employer by an injured employee." *Marks-Sloan*, 428 Md. at 14.

*Sloan*, 428 Md. at 12. Nor did the Students, after final judgment, appeal the earlier order of summary judgment that dismissed the Board. Indeed, the Students could have, and should have, asked the circuit court to exercise its discretion to direct entry of a partial final judgment under Rule 2-602(b).

Nevertheless, the Students argue that *Marks-Sloan* is a narrow holding that only applies in the context of the workers' compensation exclusivity rule. They contend that *Marks-Sloan* is not an "exclusive roadmap for all future cases" because "if a judgment is entered against both [the board and the employee], this is the way to proceed; it was not improper for [*Marks-Sloan*] to proceed as it did."

We agree with the Students that "[t]he procedural posture of *Marks-Sloan* differs from the current case," but we disagree that *Marks-Sloan* is a narrow holding. Nothing in *Marks-Sloan* suggests that the § 5-518 procedure detailed there applies only to that case. Rather, we answered two separate questions presented: (1) whether the statute grants employees of county boards of education immunity or indemnification rights; and (2) if such a duty to indemnify does exist, whether such an obligation offends the Workers' Compensation Act. *Marks-Sloan*, 428 Md. at 13; *see id.* at 13–14 (distinguishing the general holding—that a plaintiff must join the board in the litigation and any damages awarded may be executed against the board only—from its specific holding that "**as it pertains to the case *sub judice***, this statutory scheme does not violate the exclusivity rule" of the Workers' Compensation Act (emphasis added)). Even so, the only relevant difference in the posture is that despite granting the board's motion to dismiss, the circuit

19

court in *Marks-Sloan* ordered the board remain a party to fulfill its statutory indemnification duty.

**B.**    ***Board Liability and Employee Liability Are Not Mutually Exclusive Under CJ § 5-518.***

In the absence of the trial court making such an order, the Students here could have filed a motion to reintroduce the Board or else, at the proper time, appealed the decision dismissing the Board. The Students did not attempt to follow the plain language directives of § 5-518 despite the Board's numerous § 5-518 arguments at the summary judgment stage. Nor did the Students make a § 5-518 argument during or immediately following trial. Rather, the Students first cited § 5-518 in their motion to enforce the judgment based on their trial strategy that the claims requiring "malice" would be more difficult to successfully litigate.

The Students' argument that "if a school board employee does have malice, then the schools may not have to indemnify them," is likely erroneous, as discussed below, but is certainly irrelevant. Under the § 5-518 mandatory joinder rule, the board must be joined *in the event* that the employee is found liable in tort for damages produced while acting within the scope of employment. Even while litigating only the Article 24 claims, nothing prevented the Students from (1) filing a motion to reintroduce the Board; or (2) appealing the summary judgment decision after the final judgment. Counsel's trial strategy is especially vexing considering the Students proceeded to attempt to force the Board back into the litigation at the judgment enforcement stage. If the Students' intent was for the

Board to indemnify, it makes no difference whether the Students proceeded with the claims requiring malice.

Both parties misunderstand the "malice and gross negligence" clause of § 5-518(e). Underlying this case is the assumption made by both parties that board liability and employee liability are mutually exclusive. It seems that both parties accept, under this theory, that a board has no liability if its employee acted with malice or gross negligence. This misunderstanding seemingly dictated the parties' strategies throughout the litigation. At the summary judgment phase, for example, the Board argued it would have no liability if there was a finding that Officer Pulley acted with malice because such malicious actions took the claims outside the Board's possible responsibility under § 5-518. The circuit court proceeded to grant summary judgment, but based on the lack of explanation in the order it is unclear whether the court had a similar misunderstanding on that issue. Likewise, at trial the Students made a strategic choice not to argue that Officer Pulley acted with malice under the theory that any claim that required a finding of malice on the part of Officer Pulley would preclude indemnification from the Board. Indeed, Officer Pulley's counsel at trial had the same misunderstanding, arguing for a special verdict sheet on malice to make clear, in his view, which party was liable to satisfy the judgment.

The plain language of § 5-518 is at odds with the assumption that board liability and employee liability are mutually exclusive. Section 5-518(e) precludes personal liability for a board employee when two requirements are met: (1) the employee acted within the scope of employment; and (2) the employee acted without malice or gross negligence. Subsection (e) unambiguously addresses only one component: the scenarios in which an

21

employee does not have personal liability.  *See Marks-Sloan*, 428 Md. at 20–21

("[Subsection (e)] expressly provides the circumstances under which an employee may not

be held personally liable for damages."). Section 5-518(h) goes on to address enforcement

of "a judgment in tort for damages against a county board employee acting within the scope

of employment," requiring that such judgment "shall be levied against the county board

only and may not be executed against the county board employee." Subsection (h)

therefore addresses two components: (1) the scope of board liability—that judgment "shall

be levied against the county board only"; and (2) the limitations of a board employee's

liability—that judgment "may not be executed against the county board employee." Both

components are completely dependent on whether the employee acted within the scope of

employment—with one major caveat.

The caveat is the phrase "[e]xcept as provided in subsection (e)." The parties

seemingly read that cross-reference to subsection (e) as modifying both components under

subsection (h), board liability and employee liability. Subsection (e), however, makes no

reference to board liability. Its only component addresses employee liability. When

reading the provisions together, the cross-reference is most naturally read as modifying

only the component of subsection (h) that addresses board employee liability. This means

that, when a board employee acts within the scope of employment *and* with malice or gross

negligence, the employee does *not* have immunity and the employee (as well as the board)

remains liable.

The statute therefore contemplates the scenario where a board employee acts within

the scope of employment *and* with malice or gross negligence. Board employees like

22

Officer Pulley are exactly the type of employees that might fit this scenario—those that are given the power to use force to administer their duties and that might use that power maliciously. We make no determination on whether Officer Pulley acted with malice in this case but observe that it is feasible that an employee, acting maliciously in the scope of their employment, may be concurrently liable with the board under § 5-518. As prescribed by the statute, of course, such a judgment could then be levied and executed against both the employee and the board.

## C. Other Immunity Provisions Support Our Conclusions.

Section 5-518 is not the only immunity waiver statute to contemplate such a joinder requirement and the overlap of liability between government-employer and employee. Just as we did in *Marks-Sloan*, 428 Md. at 25, we will consider § 5-518 in light of the LGTCA and the MTCA.

The LGTCA prohibits execution of a judgment against an employee who acted within the scope of employment unless the employee also acted with actual malice. CJ § 5-301(b). Section 5-303(b)(1) of that same Act, however, holds a local government "liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." The language of the LGTCA thus provides an overlap of liability because the local government is liable for *any* judgment against its employee for tortious actions within the scope of employment. Whether an employee acted with malice is only relevant to the employee's liability to a plaintiff but not to the local government's liability to a plaintiff. *See Houghton v. Forrest*, 412 Md. 578, 591–92 (2010). Unlike § 5-518, the

23

LGTCA does not authorize or require joinder of the local county as a party. *See Livesay v. Balt. Cty.*, 384 Md. 1, 11, 20 (2004) (finding the local county solely an "indemnor" under the LGTCA); *Nam v. Montgomery Cty.*, 127 Md. App. 172, 184–85 (1999) ("The LGTCA . . . does not authorize the maintenance of a suit directly against the local government.") (quoting *Williams v. Prince George's Cty.*, 112 Md. App. 526, 554 (1996)).

The General Assembly thus enacted two very different indemnification models. Section 5-518 necessarily requires joinder of the employer (the local board) whereas the LGTCA necessarily precludes (in a sense) joinder of the employer (the local government). The Students' attempt to find support for their position in comparing § 5-518 to the LGTCA is therefore misplaced because of this critical distinction in the statutes.

The MTCA provides yet a third indemnification model. In CJ § 5-522(a)(4) and (b) of that Act, despite providing immunity for "State personnel," it does not waive immunity for any tortious act or omission of "State personnel" that are not within the scope of duties or made with malice or gross negligence. The MTCA is very clear that State personnel are immune only when (1) they act within the scope of employment (2) without malice or gross negligence *and* that the State's immunity is only waived if both are true. "In effect, the MTCA substitutes the State for the State personnel as the appropriate defendant in such an action." *Rodriguez v. Cooper*, 458 Md. 425, 451–52 (2018). Absent an express requirement such as the one present in the MTCA, we refuse to read mutual exclusivity into § 5-518. As written, § 5-518 provides the possibility that a county board and a county board employee may both be liable for torts committed by the employee within the scope

24

of employment—regardless of whether they were committed with malice or gross negligence.

## D.  *Legislative History Confirms Our Reading of § 5-518.*

To confirm our analysis "we may resort to legislative history to ensure that our plain language interpretation is correct."  *Zimmer-Rubert*, 409 Md. at 215.  The clear intent of the General Assembly in enacting § 5-518 was to protect employees by requiring joinder of county boards of education by way of indemnification against the board.  Indeed, the statute that § 5-518 amended (at that time § 4-105 of the Education Article ("ED")) provided a limitation of liability for boards of education and required that each board carry comprehensive liability insurance.[13]  *See* 1978 Md. Laws, ch. 22.  Although the clear

---

[13] See *Marks-Sloan*, 428 Md. at 25–27 for a succinct legislative history of the provisions that are now contained in § 5-518:

> In 1978, Senate Bill 222 was signed into law, creating the Education Article (ED) of the Maryland Code.  1978 Md. Laws, ch. 22.  When originally enacted, ED § 4-105, governing the ability of County Boards of Education to raise the defense of sovereign immunity, included substantially the same language as the current statute.  1978 Md. Laws, ch. 22.  In 1985, House Bill 940 created ED § 4-105.1, which contained provisions regarding protection for county board of education employees.  1985 Md. Laws, ch. 666. . . .  The language that appeared in former ED § 4-105.1 is the functional equivalent of the portion of current CJ § 5-518 addressing protection for county board of education employees.
>
> * * *
>
> In 1990, House Bill 206 was signed into law, creating CJ § 5-353.  1990 Md. Laws, ch. 546.  Thereafter, much of the language in ED § 4-105.1 was moved to CJ § 5-353. In 1996, Senate Bill 11 was signed into law and redesignated ED § 4-105.1 as ED § 4-106.  1996 Md. Laws, ch. 10.  In 1997, Senate Bill 114 renumbered CJ § 5–353 to its present codification at CJ § 5-518.  1997

intention of ED § 4-105 was that the boards of education and their employees both be covered by the limitation of liability, numerous trial courts misinterpreted that statute to mean that only the board was protected and not the employee.[14]

Section 5-518 was enacted to remedy trial court confusion and expressly apply limited liability to both the board and board employees. According to a report of the Senate Judicial Proceedings Committee, in order to remedy the confusion under ED § 4-105, i.e. that "one may initiate a tort claim against a county board employee and not be required to join the county board of education," the purpose of § 5-518 was to require that the board of education be joined as a party in an action against a board employee. In their statements in support of the legislation, Prince George's County Public Schools ("PGCPS") and Montgomery County similarly identified the problem as trial courts "[mis]interpreting the existing Section 4-105 as protecting the entity only, i.e., the Boards of Education, and not the employees." PGCPS and Montgomery County therefore supported the bill requiring "that the Board of Education be joined in any suit against an employee" and mandating collection against the board as opposed to the employee.

For these exact same reasons, the Chief City Solicitor of Baltimore City's Labor and Education Section opposed the bill in a hearing before the House Judiciary Committee on

---

Md. Laws, ch. 14. Today, ED §§ 4-105 and 4-106 direct the reader to CJ § 5-518 for an explanation of the protection given to county boards of education and county board of education employees.

[14] Statement of Montgomery County in Support of House Bill No. 940, Tort Liability of County Board of Education Employees.

March 14, 1985. The Solicitor argued that requiring joinder of and indemnification from the county boards would encourage frivolous lawsuits "by plaintiffs who would reason that because a county board must be joined as a party and indemnify a board employee, county boards may be more willing to settle such claims rather than endure the time and expense of litigation."[15]

The Fiscal Note for the bill further clarifies the intent of the General Assembly:

> This amended bill provides that a county board shall be joined as a party to a tort action against a county board employee acting in the scope of employment and without malice or gross negligence. A judgment for damages must be made against the county board only.[16]

It is thus clear from both the plain language and legislative history of § 5-518 that the statute exists to protect employees by requiring joinder of county boards of education by way of indemnification against the board. The Court of Special Appeals concluded in a well-reasoned opinion that the Students' motion to enforce was barred by res judicata. We need not address that issue and express no opinion on that topic as a result of the above statutory analysis.

## CONCLUSION

In sum, we hold that under § 5-518, even if a board is entitled to substantive dismissal from a case, by summary judgment or otherwise, the plaintiffs are required to maintain the board as a party—or request that it be brought back into the case—to

---

[15] Statement of Elise Jude Mason, Chief City Solicitor, Labor & Education Section, Baltimore City Law Department, Regarding House Bill 940 (Mar. 14, 1985).

[16] Dep't Legis. Servs., *Fiscal Note, House Bill 940* (1985 Session).

indemnify an employee. The holding today does not present any new hurdles for the indemnification of board employees under § 5-518. The Court's decision in *Marks-Sloan* expertly laid the course for plaintiffs bringing tort actions against board employees.

Under the plain language of § 5-518, the Students were required to join the Board in the litigation. The Students' claims that the Board was responsible for indemnification under § 5-518 were resolved when the circuit court awarded summary judgment in favor of the Board and dismissed with prejudice all claims against the Board. By deciding not to (1) request that the Board be brought back into a case for the purposes of indemnification; or (2) at the proper time, appeal the grant of summary judgment that dismissed the Board, the Students waived their right to force indemnification from the Board. After winning a judgment at trial the Students may not then play "Monday morning quarterback," *Wooddy*, 258 Md. at 251, and usher the Board back into the suit to pick up the bill.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**

28