*Brandon Gambrill, et al. v. Board of Education of Dorchester County, et al.*, No. 34, September Term, 2021, Opinion by Booth, J.

**FEDERAL PREEMPTION—CIVIL ACTIONS FILED AGAINST SCHOOL EMPLOYEES FOR NEGLIGENT ACTS OR OMISSIONS—INDEMNIFICATION BY SCHOOL BOARD FOR MONEY DAMAGES.** Under Maryland law—Maryland Code (2020 Repl. Vol., 2021 Supp.), Courts and Judicial Proceedings Article ("CJ") § 5-518, civil claims may be filed against an employee of a county school board of education for negligent acts or omissions that occur within the scope of employment. In such cases, the board of education must be joined as a party and is required to indemnify the employee for any personal liability associated with a money judgment entered against the employee.

The Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. § 7941 *et seq.* (2015) (the "Coverdell Act"), provides teachers with protection from liability for harm caused by a negligent act or omission that occurs within the teacher's scope of employment.

The Court of Appeals held that the Coverdell Act does not preempt CJ § 5-518. Under the plain language of the Coverdell Act, the Act does not provide teachers with immunity from suit. Rather, it provides teachers with liability protection for harm they cause through negligent acts or omissions within the scope of employment. Additionally, 20 U.S.C. § 7946(b)(2) establishes an express "exception" to the preemption provisions of the Act for a "state law that makes the school or governmental entity liable for the acts or omissions of its employees to the same extent as an employer is liable for the acts or omissions of its employees." The Court of Appeals held that the state statute, CJ § 5-518, fits squarely within the exception set forth under § 7946(b)(2) of the Coverdell Act and is therefore not preempted.

**NEGLIGENT SUPERVISION CLAIMS AGAINST SCHOOL EMPLOYEES—NOT PRECLUDED BY THE EDUCATIONAL MALPRACTICE DOCTRINE.** The educational malpractice doctrine applies when a court is asked to evaluate course of instruction or is called upon to review the soundness of the method of teaching that has been adopted by an educational institution. Where a case falls within the educational malpractice doctrine, courts have almost universally held that claims of "educational malpractice" are not cognizable. In *Hunter v. Board of Education of Montgomery County*, 292 Md. 481 (1982), the Court of Appeals adopted the educational malpractice doctrine and declined to recognize a cause of action based upon academic decision-making or educational placement.

The Court of Appeals held that the educational malpractice doctrine did not apply to the plaintiffs' negligence claims in this case. Here, the plaintiffs' negligence claims focus on the failure of the school employees to provide adequate supervision to their daughter, S. and other students who bullied S. and physically assaulted her, and to use reasonable

measures to protect S. while on school grounds. The plaintiffs' negligence claims are not based upon academic placement or pedagogical decisions. Rather, they involve a failure to provide adequate supervision and a safe learning environment.

**SUMMARY JUDGMENT**—The Court of Appeals held that it could not affirm the circuit court's entry of summary judgment in favor of the school board and the individually named teachers and administrators. Taking the evidence in the light most favorable to the plaintiffs, the Court determined that there were material disputes of fact, and the Court could not affirm the circuit court's summary judgment.

IN THE COURT OF APPEALS
OF MARYLAND

No. 34
September Term, 2021

BRANDON GAMBRILL, et al.

v.

BOARD OF EDUCATION OF
DORCHESTER COUNTY, et al.

*McDonald,
Watts,
Hotten,
Booth,
Biran,
Wilner, Alan M.
  (Senior Judge, Specially Assigned),
Raker, Irma S.
  (Senior Judge, Specially Assigned),

JJ.

Opinion by Booth, J.

Filed: August 26, 2022

* McDonald, J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Md. Const., Art. IV, § 3A, he also participated in the decision and adoption of this opinion.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

In this case, we must determine whether a federal law, the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. § 7941 *et seq.* (2015) (the "Coverdell Act" or "Act"), provides teacher and administrator employees of county school boards of education with "immunity from suit" in connection with negligent acts or omissions they commit within the scope of employment. Under Maryland law, negligence claims may be brought against a school board employee, provided that the school board is joined as a party and indemnifies the employee for any personal liability or money judgment entered against the employee. *See* Maryland Code (2020 Repl. Vol., 2021 Supp.), Courts and Judicial Proceedings Article ("CJ") § 5-518. The school personnel who have been individually named as defendants in this litigation contend that the Coverdell Act provides them with "immunity from suit," thereby providing them with greater protection than they receive from the indemnification provisions of CJ § 5-518. Therefore, according to the individual defendants, the Coverdell Act preempts the Maryland statute.

This federal preemption question arises in a case involving a series of violent and troubling peer conflicts between adolescents in middle school. The Petitioners before us are Brandon Gambrill, Robin Gambrill, and their minor daughter, S. (collectively, the "Gambrills"). The Gambrills brought a negligence action against teachers and administrators at S.'s middle school for injuries that S. suffered at the hands of her fellow students.

The circuit court granted the defendants' motion for summary judgment, which was affirmed by the Court of Special Appeals. *Gambrill v. Bd. of Ed. of Dorchester County*, 252 Md. App. 342 (2021). Both the circuit court and the intermediate appellate court

determined that the Coverdell Act preempts Maryland law, and therefore precludes the Gambrills from pursuing their negligence claims against the school employees. The Gambrills also sued the Dorchester County Board of Education (the "Board") for negligence. With respect to the Gambrills' negligence claim against the Board, the circuit court and the Court of Special Appeals determined that the claim fell within the "educational malpractice doctrine," which bars claims regarding the quality of education provided by an educational institution. In addition, the circuit court also determined that, even if the Gambrills' negligence claim was not barred by the Coverdell Act and the educational malpractice doctrine, the defendants were nonetheless entitled to summary judgment because no reasonable jury could conclude that the defendants were negligent in supervising S. and the other students.

As we will explain, the circuit court erred in granting the motion for summary judgment. We hold that the Coverdell Act does not preempt CJ § 5-518. We further hold that the Gambrills' negligence count, which asserts that the Respondents negligently supervised S. and the students who assaulted her, does not fall within the educational malpractice doctrine. Finally, based upon the material disputes of fact that appear in the record, we cannot affirm the circuit court's entry of summary judgment. For these reasons, we reverse the judgment of the Court of Special Appeals and remand the case to the circuit court for further proceedings.

# I

## Factual Background[1]

During the 2016–2017 school year, the Gambrills' daughter, S.,[2] was involved in several physical and verbal altercations with other students while in her sixth-grade year at Mace's Lane Middle School ("Mace's Lane"), a public school in Dorchester County. In September 2016, student "N." began harassing S. at school by calling her names, pulling her hair, and pushing her. When S. told her parents, they went to the Assistant Principal, Cynthia Woolford, and told her. Ms. Woolford told the parents that she would "handle it" or "take care of it." Early in the fall semester of 2016, the Gambrills completed two bullying reports concerning N.'s behavior and the school's lack of action, which were given to the school's guidance counselor.

When the bullying did not stop, the Gambrills contacted Ms. Woolford, as well as Dr. Michael Collins, Principal, and Dr. James Bell, Supervisor of Student Services, and

---

[1] The factual background supplied by this opinion comes from the exhibits that the parties appended to the motion for summary judgment and response thereto. Because the trial court disposed of the matter through summary judgment, we recite the factual background with the appropriate standard of review in mind—that is, construing the factual record in the light most favorable to the non-movants. *See, e.g.*, *Newell v. Runnels*, 407 Md. 578, 607 (2009); *Gourdine v. Crews*, 405 Md. 722, 735 (2008). Moreover, we do not endeavor to resolve factual disputes, but merely determine whether they exist, and if so, whether they are sufficiently material to be tried. *Newell*, 407 Md. at 607. Stated another way, we acknowledge that the Respondents dispute that that they were negligent as the Gambrills' contend. That said, it is not this Court's role to resolve disputes of material fact.

[2] To protect their privacy, we do not identify any of the children by name. We refer to the two substitute teachers by number, however, not to protect their identities but because their names are not disclosed by the record.

3

requested that S.'s locker be moved. S.'s and her parents' initial requests that S.'s locker be relocated were denied.[3] According to the Gambrills, when they made the initial request, the administrators told them that it was too late in the school year to move her locker.

The Gambrills contend that throughout the fall, the attacks against S. increased in severity. On October 26, 2016, S. was attacked by Students 5 and 9 while in class with Substitute Teacher 1. S. was physically beaten on her head and body. According to S., she screamed for help, but Substitute Teacher 1 did not intervene because another student was distracting her. The attack lasted approximately one minute. According to S, she had not in any way initiated or instigated the attack. S. went to Ms. Woolford's office to advise her of the attack and told her who the assailants were. Ms. Woolford completed student behavior reports for Students 5 and 9 and issued them in-school suspensions. S. sustained a concussion from the attack and was medically ordered to stay home from school for several days.

The Gambrills promptly reported the attack to Dr. Collins, who apologized to the Gambrills for the incident and admitted that "substitute teachers are not the best trained and cannot control the classroom." Ms. Woolford also met with the Gambrills the day after the incident. S. informed Ms. Woolford that she was also having issues with Students 4 and 7.[4]

---

[3] Mr. Gambrill testified at his deposition that the Gambrills had asked that S.'s locker be moved in October or November 2016, but that her locker was not moved until January 2017.

[4] As the Court of Special Appeals observed in its opinion, the morning after her meeting with the Gambrills, Ms. Woolford changed S.'s schedule to minimize contact with

In late November, Student 4 walked out into the hall without permission and verbally attacked S. who was standing in line across the hall. Student 4 began shouting at S. saying, "come on and fight me" and other inappropriate words. Ms. Woolford issued Student 4 an in-school suspension, and also arranged for external mediation between S. and Student 4, at which both S.'s mother and Student 4's mother were present. In early December, Ms. Woolford instructed S.'s teachers to change seating assignments because S. and Student 2 now had issues.

In mid-December 2016, S. was physically attacked while in class under the supervision of Substitute Teacher 2. Student 8 grabbed S. by the neck and flipped her backwards. S. struck her head on a table, resulting in another concussion. According to the Gambrills' complaint, and S.'s deposition testimony, Substitute Teacher 2 had a headache and had put his head down on the desk. The Gambrills kept S. home from school until December 19.

When S. returned to school on December 19, S. and Student 8 engaged in another physical altercation. S. had gone to the nurse's office to obtain a note about her concussion for her gym teacher. Ms. Woolford brought the male student to the nurse's office and left him alone with S. Student 8, who was approximately one foot taller than S., physically attacked S. and struck her in the face. S. contends that she tried to defend herself and

the students that S. identified. However, the change could not be given immediate effect, so Ms. Woolford modified S.'s schedule to ensure that she would have limited contact with those students in the interim. With the new schedule, S. had no classes with Students 4, 5, and 9. Ms. Woolford was unable to move S. and Student 7 into separate classes but instructed S.'s teachers to "keep [S. and Student 7] away from one another, as much as reasonably possible, and immediately report any interaction between these students."

pushed the male student away from her. After the assault, S. had to be treated by the school nurse because S. had an apparent physical injury as a result of the assault. Ms. Woolford completed behavior reports for both students and issued each student a two-day out-of-school suspension.

The Gambrills contend that Ms. Woolford failed to investigate the incident properly, never permitting S. to tell her side of the events, and instead, immediately issued the suspension. At her deposition, Ms. Woolford admitted that she "would hope [she] would have" given S. the opportunity to tell her side of the story, but that she "didn't recall" if she had done so. S. submitted an affidavit stating that Ms. Woolford knew that S. was in the nurse's office when she brought the male student down to see the nurse, and that no one, including Ms. Woolford, asked S. what happened that day after the assault occurred. According to the Gambrills, the documents that they attached to their opposition to summary judgment (nursing notes, Ms. Woolford's notes, and Ms. Woolford's deposition testimony) provide evidence in support of their contention that Ms. Woolford made the decision to suspend S. prior to investigating the situation.

The Gambrills filed an administrative appeal of Ms. Woolford's decision to suspend S. In their appeal, the Gambrills explained that S. simply defended herself against the male student, who days before, had assaulted S., giving her a concussion. Dr. Bell denied the appeal.

In January 2017, Dr. Bell spoke with the administration at Mace's Lane about the Gambrills' concerns. To ensure S.'s safety going forward, the administration issued S. a "flash pass" that she could use to immediately go to the guidance counselor or school

6

administration if she felt that a conflict may escalate. The administration also changed S.'s locker location as the Gambrills had requested, and changed her schedule as requested. The administration continued to pursue external mediation as a possible solution.

Despite these changes, the altercations continued. According to the Gambrills, they notified Ms. Woolford and Dr. Collins on several occasions that the bullying and physical assaults were continuing. S. also claims that she was falsely accused of bullying and harassing other students when she undertook no such behavior. S. stated in her affidavit that there were "false statements made about me because I was being bullied and targeted by other students at Mace's Lane," but that she did not harass or bully the students that made the false reports. In fact, according to the Gambrills, S. was under such pressure that she developed a coping mechanism of withdrawing and making a cat-like hissing noise to stay away from other students "instead of trying to say harmful stuff or anything that would get me in trouble."

There were other minor incidents throughout the spring semester, but the most serious occurred on May 8 when Student 4 ran out of her classroom and attacked S., and a full-blown fistfight ensued. Student 4 was suspended with a recommendation of expulsion and law enforcement was notified.

The Gambrills contend that they were forced to remove S. from Mace's Lane, and now have to commute 45 minutes each way to transport her to a school where she is safe.

**Procedural History**

*A. Circuit Court for Dorchester County*

On May 10, 2018, the Gambrills filed a five-count complaint in the Circuit Court for Dorchester County, naming James C. Bell, Supervisor of Student Services for Dorchester County; Michael Collins, the Principal of Mace's Lane; Cynthia Woolford, the Assistant Principal of Mace's Lane; Substitute Teacher 1; and Substitute Teacher 2 as defendants. The Gambrills also named the Board of Education for Dorchester County as a defendant under a *respondeat superior* theory of liability. Count I alleged violations of S.'s state constitutional right to a "thorough and efficient" education. Count II alleged violations of S.'s state constitutional right to due process. Count III alleged a pattern or practice of improper conduct in violation of the Maryland Constitution. Count IV alleged negligent hiring, training, retention, and supervision. Count V alleged general negligence against the individual teachers and their employer, the Board.

With respect to Count V, the Gambrills alleged that: S. was in the custody and under the direct supervision of the defendants when the negligent acts or omissions occurred; Ms. Woolford, Dr. Bell, and Dr. Collins were acting within the scope of their employment with the Board when they failed to properly supervise students at Mace's Lane; the defendants owed a duty to the Gambrills to protect S. from harm from other students and school personnel, and to use reasonable care when supervising students, so as to ensure S.'s physical safety and well-being; the defendants breached this duty and were negligent by

failing to properly and reasonably supervise S. and other students while the students were in the custody of the defendants; the defendants breached their duty of care and were otherwise negligent by failing to provide adequate protection to S. from the negligent misconduct of employees of the Board; and that as a result of this breach of duty on the part of the defendants, the Gambrills and S. will continue to sustain actual emotional injuries, including severe emotional and mental distress, and economic damages, including past and future medical bills and expenses.

The Gambrills voluntarily dismissed Counts I and III. The circuit court then granted summary judgment as to the remaining counts. With respect to Count V—the sole count for our consideration here—the circuit court judge ruled from the bench, stating as follows:

> With regard to the negligence claim, Count [V], I find that the individual Defendants in this case are entitled to summary judgment as a matter of law because they are entitled to statutory immunity. They're protected by the Paul D. Coverdell Teacher Protection Act of 2001.
>
> The purpose of that statute is to provide teachers, principals, and other school professionals the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment.
>
> Those defendants are entitled to summary judgment with regard to that claim for the reason that there are no substantive or procedural due process violations, therefore that Act squarely covers them and provides them with immunity.
>
> I find that the Board also is entitled to summary judgment as a matter of law. The negligent acts at issue here that are alleged were educational decisions and thus within the purview of the *Hunter* [*v. Bd. of Educ. of Montgomery County.*, 292 Md. 481 (1982)] and *Gurbani* [*v. Johns Hopkins Health Sys. Corp.*, 237 Md. App. 261 (2018)] cases[.]
>
> No reasonable jury could conclude that the Defendants were negligent in supervising [S.] and other students at Mace's Lane [Middle School] . . . .

9

[N]o reasonable jury could find that the . . . Defendant Board . . . breached [its] duty to protect her from foreseeable harm.

I conclude . . . that a cause of action here would create that [sword] of Damocles hanging over the heads of well-intentioned educators who are tasked with the job of resolving peer disputes among adolescents.

Again, I find that there is, not just an absence of evidence to support the allegations that the Defendants failed to adequately respond to, investigate, and prevent reasonably foreseeable harassment and other harm to [S.], it's to the contrary, the evidence shows that the Defendants responded and took action in response to the allegations of [S.'s] family.

I'm not sure if it amounts to contributory negligence or assumption of the risk, I'm not clear on that point, but the record does establish that at times [S.] was engaging her classmates and that she was involved in altercations with other students that could have contributed to the situation. Very much like the case law cited by defense counsel that ameliorated liability on behalf of the school board in other cases.

\*　　\*　　\*

I by no means am not affected by this case or disturbed that [S.] suffered injuries in this case.

I was also disturbed by some of the comments, whether she made them in frustration or not, Ms. Woolford is a, should be an administrative professional, and the comments she made about substitute teachers are very disturbing to me, that an administrator would make those comments.

But, again, the fact that I'm disturbed by her comments and the fact that I'm not satisfied in this case with the outcome and the violence that was visited upon [S.], I am charged with applying the law in this case and that's what I've attempted to do, squarely.

After ruling from the bench, the circuit court entered an order granting the defendants' motion for summary judgment "for the reasons set forth on the record" at the June 17, 2019 hearing. Thereafter, the Gambrills filed a timely appeal to the Court of Special Appeals.

10

## B. Court of Special Appeals

The Court of Special Appeals affirmed the circuit court's judgment. *Gambrill*, 252 Md. App. 342. With respect to the negligence claims against the individual school employees, the intermediate appellate court interpreted the federal Coverdell Act as providing individual employees with "immunity" from suit. *Id.* at 356. Based upon its interpretation of the Coverdell Act as providing teachers with immunity from suit, the intermediate appellate court observed that the Coverdell Act "'preempts the laws of any State to the extent that such laws are inconsistent … except that this … shall not preempt any State law that provides additional protection from liability relating to teachers.'" *Id.* at 354 (quoting 20 U.S.C. § 7945(a)). The intermediate appellate court determined that the protections of the Coverdell Act are triggered once a state accepts federal funding pursuant to the Elementary and Secondary Education Act ("ESEA"). The court explained that under the Coverdell Act, a state has four options: "(1) reject federal ESEA education funding; (2) accept the federal ESEA funding and accept the Coverdell immunity; (3) accept the federal ESEA education funding and adopt its own teacher immunity statute 'that provides additional protection from liability relating to teachers'; or (4) accept the federal ESEA funding and pass a law that explicitly refuses to adopt immunity." *Id.* The court took judicial notice of the fact that the State has accepted the funds, pointed out that Maryland has not adopted a statute explicitly refusing to adopt Coverdell immunity, and stated that the issue was "whether Maryland has thereby elected Coverdell immunity or has adopted

11

a state law that provides additional protection from liability relating to teachers." *Id.* at 355 (citing 20 U.S.C. § 7945(a)).

The Court of Special Appeals reasoned that because Maryland's applicable statute—CJ § 5-518—only provides teachers "with a right of indemnification but not immunity from suit[,]" the Coverdell Act and "its immunity provision provides broader protection because it acts as a bar to a lawsuit and the accompanying discovery process, whereas an indemnification provision allows a plaintiff to recover, and then shifts the financial burden away from the liable defendant." *Id.* at 355–56. Relying on the preemption clause of the Coverdell Act, set forth in 20 U.S.C. § 7945, the intermediate appellate court held that "federal Coverdell immunity applies and preempts the teachers' state statutory right to indemnification under CJ § 5-518." *Id.* at 356.

Observing that the Coverdell Act "does not provide immunity for employers of teachers or for local school boards," the Court of Special Appeals proceeded to determine whether the circuit court correctly concluded that the negligent acts fell within the educational malpractice doctrine that this Court described in *Hunter*, 292 Md. 481, which prohibits claims alleging negligence related to academic placement or decision-making. *Id.* at 356–57. The Court of Special Appeals concluded that the Gambrills' negligence claims fell within the educational malpractice doctrine, holding that "student discipline is an essential component of educational policy and that claims of negligent school discipline are prohibited as a matter of law under *Hunter*." *Id.* at 358. The intermediate appellate court reasoned that Maryland no longer follows an "exclusionary model" for student discipline, "whereby students who caused disciplinary problems were excluded from the

12

classroom—by expulsion, suspension or just temporary removal to the principal's office—so that the teacher and the remaining students could focus on their lessons." *Id.* at 359. The court observed that Maryland law now requires "restorative discipline approaches,"[5] which include "conflict resolution, mediation, peer mediation, restorative conference, social emotional learning, trauma-informed care, positive behavioral interventions, and rehabilitation." *Id.* at 360 (citing Maryland Code (2018 Repl. Vol. 2021 Supp.), Education Article ("ED") § 7-306(a)(2)).[6] Citing to secondary sources, the Court of Special Appeals stated that "educational experts who advocate for the adoption of the restorative model don't consider discipline to be separate from the program of academic instruction, but as a

---

[5] The Court of Special Appeals referenced ED § 7-306(a)(1), which defines the "restorative approach" as a student discipline model that:

> (i)  Is preventive and proactive;
>
> (ii)  Emphasizes building strong relationships and setting clear behavioral expectations that contribute to the well-being of the school community;
>
> (iii)  In response to behavior that violates the clear behavioral expectations that contribute to the well-being of the school community, focuses on accountability for any harm done by the problem behavior; and
>
> (iv)  Addresses ways to repair the relationships affected by the problem behavior with the voluntary participation of an individual who was harmed.

[6] Although the statute requires county school boards to adopt regulations that include restorative approaches, the statute recognizes that the county regulations "shall [also] provide alternative programs, which may include in-school suspension, suspension, expulsion, or other disciplinary measures that are deemed appropriate[.]" ED § 7-306(d)(2)(ii).

13

vital component of the educational program." *Id.* at 360–61 (citations omitted). The intermediate appellate court stated that it was "persuaded that student discipline is a vital and integral part of our educational system and must necessarily be covered by the *Hunter* line of cases." *Id.* at 361. The court concluded by stating that it did "not diminish the severity or seriousness of S.'s injuries. They are certainly upsetting. It must be horrifying to have a child return from school covered in bruises and welts." *Id.* at 362. The Court of Special Appeals nonetheless concluded that "[w]e are bound to [the holding in *Hunter*] and could not change it, even if we wanted to." *Id.* The intermediate appellate court concluded that the rationale articulated by this Court in *Hunter* when it refused to acknowledge a tort for educational malpractice

> would also apply here: there is a lack of a workable rule of care against which a defendant's conduct or the adequacy of disciplinary procedures could be measured; there is inherent uncertainty in computing damages; and the entire exercise would place unwarranted burden on the already overburdened resources of our schools, and the judiciary.

*Id.* at 362–63 (citing *Hunter*, 292 Md. at 484).

For these reasons, the Court of Special Appeals affirmed the entry of summary judgment in favor of the individual defendants because of "the immunity provided by the federal Coverdell Act" and for the Board "because Maryland law does not recognize a cause of action in tort for educational negligence." *Id.* at 363. Because it affirmed the circuit court's entry of summary judgment on these bases, the Court of Special Appeals stated that it did not need to "consider the third basis for the circuit court's summary judgment, that no reasonable juror would have found any of the defendants liable." *Id.*

14

We granted the Gambrills' petition for writ of *certiorari* and consider the following

questions:[7]

[7] Although questions 3 and 4 were briefed by the parties, only questions 1 and 2 were raised by the Gambrills in their petition for writ of *certiorari*. The Gambrills similarly failed to raise questions 3 and 4 in their opening brief before the Court of Special Appeals, choosing to raise the issues in their reply brief. Accordingly, Respondents assert that this Court should not consider questions 3 and 4 because the Gambrills waived them. Ordinarily, we would agree with Respondents. Maryland Rule 8-131(b) provides:

> Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals . . . the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.

We determine that this is one of those extraordinary and rare instances in which we should exercise our discretion and consider the issues contained in questions 3 and 4. All of the issues presented were raised and decided by the circuit court as part of the proceeding that resulted in the entry of summary judgment in the Respondents' favor. On appeal, all the issues were briefed and argued once again (although the Gambrills raised questions 3 and 4 for the first time in their reply brief in response to the Respondents' briefing on the issues). Although the Court of Special Appeals commented on the fact that the Gambrills waited until their reply brief to raise the argument that their claims are not barred by the educational malpractice doctrine, the intermediate appellate court nonetheless decided this issue in a reported opinion, which has great public importance. In doing so, as we discuss more fully herein, the intermediate appellate court interpreted the doctrine of educational malpractice in a manner that is at odds with this Court's interpretation.

Since the intermediate appellate court's reported opinion, we observe that there have been at least three federal district court cases which have discussed Maryland's application of the educational malpractice doctrine as articulated in *Hunter*. *See Botts v. Johns Hopkins*, 2021 WL 1561520 (D. Md. 2021); *Willey v. Bd. of Educ. of St. Mary's County*, 557 F. Supp. 3d 645 (D. Md. 2021); *Gandy v. Howard County Bd. of Educ.*, 2021 WL 3911892 (D. Md. 2021). In the latter two cases—and unlike the Court of Special Appeals in this case—the federal district court has declined to apply *Hunter* at the motion to dismiss stage and has permitted the plaintiffs' negligence claims against school boards and school personnel to proceed. *See Gandy* at *7 (denying the defendants' motion to dismiss the plaintiffs' negligence claim as an impermissible malpractice claim where the parents alleged that the teachers were unfamiliar with their child's special educational needs, which increased the chance that the child would suffer physical harm); *Willey*, 557 F. Supp. 3d at

1. Does the federal Coverdell Act preempt Maryland law and apply to preclude any liability on the part of either school personnel or boards of education in connection with the negligence of teachers and school administrators?

2. Did the federal Coverdell Act shield the Individual Respondents from liability for their negligent actions where the Respondents failed to introduce any evidence at all that Maryland accepts the prerequisite federal funding required for the Coverdell Act to apply?

3. Does the Gambrills' negligence claim against the school personnel and the school board fall within the education malpractice doctrine, which precludes claims arising from educational decision-making or academic placement, which this Court recognized in *Hunter v. Board of Education of Montgomery County*, 292 Md. 481 (2018)?

4. Was the circuit court's decision to grant summary judgment, including the court's stated reasons, legally correct?

For the reasons set forth below, we answer "no" on questions one, three and four. Given our answer to question one, we determine that there is no reason for us to reach question

---

668–69 (denying the defendant's motion to dismiss plaintiff's negligence claims filed against a county board of education on the basis of the educational malpractice doctrine where the plaintiffs alleged that the defendants failed to provide adequate security and supervision on school grounds, causing their daughter to be killed by another student).

Given that the reported opinion of our colleagues expands the educational malpractice doctrine to preclude litigants from bringing common law negligence actions in a manner not intended by this Court, we determine that it is appropriate to address question 3. On question 4, it appears from the record that the focus at both the circuit court and the intermediate appellate court was on the federal and state immunity issues and not the merits of the summary judgment facts. Given our holding that the Gambrills' claims are neither preempted by federal law nor barred by the educational malpractice doctrine, in light of the sparse and somewhat unclear reasoning expressed by the circuit court in granting summary judgment in favor of the Respondents, we determine that the interest of justice would be served by remanding the case for further proceedings.

16

two.  We shall reverse the judgment of the Court of Special Appeals and remand this case to the circuit court for further proceedings consistent with this opinion.

## III

## Standard of Review

In this case, we are being asked to consider the appropriateness of the circuit court's entry of summary judgment on Count V of the complaint—a general negligence count against the individually named teachers and administrators, and the Dorchester Board of Education that employs the individual defendants.

Maryland Rule 2-501(a) provides, in relevant part: "[a]ny party may file a written motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law."  We review the circuit court's grant of summary judgment *de novo.*  We conduct an independent review of the record to determine whether a general dispute of material facts exists and whether the moving party is entitled to judgment as a matter of law.  *Md. Cas. Co. v. Blackstone Int'l, Ltd.*, 442 Md. 685, 694 (2015).  "We review the record in the light most favorable to the non-moving party and construe any reasonable inferences which may be drawn from the facts against the movant."  *Id.* at 694.  We do not endeavor to resolve factual disputes, but merely determine whether they exist and are sufficiently material to be tried.  *Newell v. Runnels*, 407 Md. 578, 607 (2009).  "If no material facts are in dispute, we determine whether the trial judge's ruling was legally correct.  Ordinarily, we may affirm the trial court only on the grounds upon which the trial court relied in granting summary

judgment." *Id.* at 608 (internal quotations and citations omitted). Here, the circuit court's summary judgment ruling was based in large part upon the court's interpretation of a federal statute, as well as the court's interpretation of Maryland case law involving claims for educational malpractice. These are legal issues that we review *de novo*.

## IV

## Discussion

As discussed above, the Court of Special Appeals held that the federal Coverdell Act preempts CJ § 5-518, a state statute that authorizes negligence claims to be filed against teachers but requires that a school board be joined as a party and indemnify the teacher for any personal liability or money judgment entered in connection with the negligent conduct. Based upon its interpretation of the federal statute, the intermediate appellate court agreed with the circuit court that the Coverdell Act precluded the Gambrills from pursuing common law negligence claims against the individual board employees named in their lawsuit. *Gambrill*, 252 Md. App. at 363. According to the intermediate appellate court, the Coverdell Act provides teachers with "immunity from suit," and therefore preempts the Maryland statute because the federal statute provides teachers with greater protection. *Id.* at 356. As explained below, we interpret the federal statute differently and conclude that federal law does not preempt CJ § 5-518.

### A. *Federal Preemption Overview*

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012). The existence of two sovereign laws

18

allows for "the possibility that laws can be in conflict or at cross-purposes." *Id.* at 398–99.

The Supremacy Clause[8] provides that federal law is supreme over state law, and any state

law that stands in conflict with the federal law is preempted. The Supreme Court has noted

that "[t]his relatively clear and simple mandate has generated considerable discussion in

cases where [courts] have had to discern whether Congress has pre-empted state action in a

particular area." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 540–41 (2001).

There are three widely recognized forms of preemption: "(1) express preemption,

in which Congress expressly states its intent to preempt state law; (2) field preemption, in

which Congress occupies a certain field by regulating so pervasively that there is no room

left for the states to supplement federal law; and (3) conflict preemption, arising when state

law is preempted to the extent it actually conflicts with federal law." *Decohen v. Capital*

*One, N.A.*, 703 F.3d 216, 223 (4th Cir. 2012) (internal quotations and citations omitted).

The "ultimate touchstone" for determining whether federal law preempts state law

is Congressional intent. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). In considering

whether the Gambrills' negligence claims are preempted by federal law, we first start with

the general presumption that Congress did not intend to preempt state law. *Columbia*

*Venture, LLC v. Dewberry & Davis*, *LLC*, 604 F.3d 824, 830 (4th Cir. 2010) (citations

---

[8] The Supremacy Clause states, in pertinent part:

> This Constitution, and the Laws of the United States . . . shall be the supreme
> Law of the Land; and the Judges in every State shall be bound thereby, any
> Thing in the Constitution or Laws of any State to the contrary
> notwithstanding.

U.S. Const. Art. VI, § 2.

omitted). "This presumption is especially strong against 'preemption of state remedies like tort recoveries, when no federal remedy exists.'" *Id.* at 830 (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984)) (additional quotation omitted). With these principles in mind, we turn to the federal and state statutes at issue.

### 1. *The Coverdell Act*

Congress enacted the Paul D. Coverdell Teacher Protection Act of 2001 as part of the No Child Left Behind Act. *See* 20 U.S.C. § 7941 (2015). The stated purpose of the Act is to "provide teachers,[9] principals, and other school professionals the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment." 20 U.S.C. § 7942. The Coverdell Act applies to both public and private schools in states that receive funds under Chapter 70 of the Education Title. 20 U.S.C. § 7944.

The Coverdell Act provides teachers with protection from liability under certain circumstances. Specifically, § 7946(a) provides:

> *Except as provided in subsection (b)*, *no teacher in a school shall be liable for harm* caused by an act or omission of the teacher on behalf of the school if—

---

[9] Under the Coverdell Act, "teacher" is defined to include a teacher, instructor, principal, administrator, or educational employee who works in a school, or individual school board member. 20 U.S.C. § 7943(6). The Act's plain wording limits its applicability to individual teachers, principals, and other school professionals, and does not extend to school boards or districts. Other courts that have interpreted the statute have similarly determined that school boards or school districts may be vicariously liable for teachers' and administrators' negligence even where the individual is not personally liable under the Act. *See, e.g.*, *Wormuth v. Lammersville Union School District*, 305 F. Supp. 3d 1108, 1131–32 (E.D. Cal. 2018).

(1) The teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;

(2) The actions of the teacher were carried out in conformity with Federal, State and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;

(3) If appropriate or required, the teacher was properly licensed, certified or authorized by appropriate authorities for the activities or practice involved in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the teacher's responsibilities;

(4) The harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher; and

(5) The harm was not caused by the teacher operating a motor vehicle, vessel, aircraft or other vehicle . . . .

(emphasis added). The teacher liability provisions of the Act, however, do not end there.

Subsection (b) established the following exceptions:

*If the laws of a State limit teacher liability subject to one or more of the following conditions, such conditions shall not be construed as inconsistent with this section*:

(1) A State law that requires a school or governmental entity to adhere to risk management procedures, including mandatory training of teachers.

*(2) A State law that makes the school or governmental entity liable for the acts or omissions of its teachers* to the same extent as an employer is liable for the acts or omissions of its employees.

(3) A State law that makes a limitation of liability inapplicable if the civil action was brought by an officer of a State or local government pursuant to State or local law.

21

20 U.S.C. § 7946(b) (emphasis added).  The Respondents assert that the Court of Special Appeals correctly interpreted the Coverdell Act.  Specifically, they argue that the Coverdell Act preempts CJ § 5-518 because the Coverdell Act provides public school employees with greater protection from liability than the state statute.  The Gambrills disagree, and point out that, in its preemption discussion of the Coverdell Act, the Court of Special Appeals equated the phrase "liability from harm" with "immunity from suit," and contend that there is a difference between those legal concepts.  They also point out that, in its preemption analysis, the intermediate appellate court only discussed the liability protections in subsection (a) and made no mention of the exceptions set forth in subsection (b).[10]

As we explain more fully below, we hold that the Coverdell Act does not preempt state law because the state statute—CJ § 5-518—fits squarely within the state law exceptions set forth in 20 U.S.C. § 7946(b).

2.     *CJ § 5-518*

The procedure for asserting a tort claim against a county school board and its employees[11] is governed by CJ § 5-518.  Under the statute,

> [a] county board employee acting within the scope of employment, without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, including damages that exceed the limitation on the county board's liability.

---

[10] In discussing the liability protection provisions set forth in § 7946(a) of the Coverdell Act, the Court of Special Appeals simply stated that there were "some exceptions not relevant here[.]"  *Gambrill*, 252 Md. App. at 353.  We respectfully disagree and determine that they are not only relevant, but dispositive.

[11] "County board employee" is defined as "[a]ny employee whose compensation is paid in whole or in part by a county board of education[.]" CJ § 5-518(a)(3)(i).

22

CJ § 5-518(e). Stated another way, a county board employee who is acting within the scope of his or her employment is not personally liable for money damages resulting from negligent acts or omissions. *Id.* The statute requires that the county school board be joined as a party to an action against a county board employee or board member. CJ § 5-518(d).[12] For negligent acts and omissions by an employee within the scope of employment, the county board must indemnify the employee for all money damages resulting from the tortious conduct. CJ § 5-518(e).[13] The statute states, in pertinent part, that any "judgment in tort for damages against a county board employee acting within the scope of employment . . . shall be levied against the county board only and may not be executed against the county board employee[.]" CJ § 5-518(h). Subsection (b) permits a county school board

---

[12] CJ § 5-518(d)(1) states:

(1) The county board shall be joined as a party to an action against a county board employee, county board member, or volunteer that alleges damages resulting from a tortious act or omission committed by the employee in the scope of employment, by the county board member within the scope of the member's authority, or by the volunteer within the scope of the volunteer's services or duties.

(2) The issue of whether the county board employee acted within the scope of employment may be litigated separately.

(3) The issue of whether the county board member acted within the scope of the member's authority may be litigated separately.

(4) The issue of whether the volunteer acted within the scope of the volunteer's services or duties may be litigated separately.

[13] The statute also includes indemnity provisions for board members and volunteers. *See* CJ § 5-518(f) and (g).

to raise the defense of sovereign immunity for claims above $400,000 but not for claims under that amount. CJ § 5-518(b), (c).[14]

The question of whether an employee was acting within the scope of employment may be litigated separately. CJ § 5-518(d)(2). Additionally, a finding that an employee of a county school board acted with malice or gross negligence does not absolve the school board of liability. Rather, CJ § 5-518 "contemplates the scenario where a board employee acts within the scope of employment *and* with malice or gross negligence." *Neal v. Balt. City Bd. of School Commissioners*, 467 Md. 399, 422 (2020) (emphasis in original). In other words, "it is feasible that an employee, acting maliciously in the scope of their employment, may be concurrently liable with the board under [CJ] § 5-518," in which case "a judgment could then be levied and executed against both the employee and the board." *Id.* at 422.

Two years ago, in *Neal*, this Court discussed the statutory process and requirements for bringing tort claims against school employees and school boards under CJ § 5-518. We discussed and affirmed the analysis that the Court outlined in *Board of Education of Prince George's County v. Marks-Sloan*, 428 Md. 1 (2012). In connection with our preemption analysis, it is useful to discuss this Court's statutory interpretation and holdings in these cases.

In *Marks-Sloan*, we considered whether the legislative intent in enacting CJ § 5-518 was to provide county board employees with immunity from suit, or immunity from

---

[14] CJ § 5-518(b) states: "A county board of education, described under Title 4, Subtitle 1 of the Education Article, may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self-insured, or a member of a pool described under § 4-105(c)(1)(ii) of the Education Article, above $400,000."

24

damages. 428 Md. at 25. In concluding that the Legislature intended to establish the latter as opposed to the former, this Court discussed in detail the legislative history of the statutory scheme, as well as the applicable provisions of the Education Article[15] that address school board immunity. *Id.* at 25–27. We concluded the legislative intent in enacting ED § 4-106 and CJ § 5-518 was to provide board employees with indemnification, or "an immunity from damages, which is distinct from the concept of complete immunity from liability." *Id.* at 27.

This Court provided a summary of the procedure outlined in CJ § 5-518 for filing claims against county school boards and board employees:

> Tort suits may be brought against county board employees and judgments may be entered against them. The county board of education must be joined as a party to the tort action in situations where the employee has acted within the scope of employment without malice or gross negligence. If a judgment is entered against the employee and the county board, the county board alone is responsible for satisfying the judgment, as county board employees may not be held personally liable in tort for damages.

*Id.* at 32.

We revisited CJ § 5-518 and its legislative history in *Neal v. Baltimore City Board of School Commissioners*, 467 Md. 399 (2020). In *Neal*, plaintiffs, who were parents and guardians of three students, brought an action against the school board and a school police officer for alleged assault by the school officer in the scope of his employment. The circuit

---

[15] Statutory provisions in the Education Article discuss protection for county boards of education and county board employees and must be read together with CJ § 5-518. Maryland Code (2018 Repl. Vol., 2021 Supp.), Education Article ("ED") § 4-105 provides, "[a] county board shall have the immunity from liability described under § 5-518 of the Courts and Judicial Proceedings Article." Similarly, ED § 4-106(a) provides: "[a] county board employee shall have the immunity from liability described under [CJ] § 5-518[.]"

25

court granted the school board's motion for summary judgment on the independent claims that had been filed against the board, and the board was dismissed from the case. 467 Md. at 409. The plaintiffs' counsel did not appeal the summary judgment dismissal of the board, nor did plaintiffs' counsel request that the board remain in the case as a party for any indemnity purposes. *Id.* at 404. The case proceeded to trial against only the school officer. The jury returned a verdict against the school officer and awarded money damages to each of the three students. *Id.* at 410. After the verdicts were entered, the plaintiffs filed a motion to enforce the judgments against the school board. *Id.* at 411. After the circuit court granted the plaintiffs' motion, the school board appealed the judgment to the Court of Special Appeals, which reversed the judgment. *Id.* at 412.

We granted *certiorari* to consider whether the board was required to be joined as a party in order for the judgment to be satisfied against the board. *Id.* at 414. We held that it did and affirmed the Court of Special Appeals' judgment in the board's favor. *Id.* at 403–04. Specifically, we held that under the plain language of CJ § 5-518, even if there is a basis for dismissal of independent claims against a board of education (for example, claims alleging intentional infliction of emotional distress or negligent hiring), the board is required to remain as a party where the plaintiff ultimately seeks money damages against a school employee under a vicarious liability theory and the indemnification provisions set forth in the statute. *Id.* at 426.

Reviewing the legislative history, we stated that:

[CJ §] 5-518 was enacted to remedy trial court confusion and expressly apply limited liability to both the board and board employees. According to a report of the Senate Judicial Proceedings Committee, in order to remedy the

26

confusion under ED § 4-105, i.e. that "one may initiate a tort claim against a county board employee and not be required to join the county board of education," the purpose of § 5-518 was to require that the board of education be joined as a party in an action against a board employee.

*Id.* at 425. We also observed that the Fiscal Note for the legislative bill that enacted CJ § 5-518 clarified the intent of the General Assembly:

> This amended bill provides that a county board shall be joined as a party to a tort action against a county board employee acting in the scope of employment and without malice or gross negligence. A judgment for damages must be made against the county board only.

*Id.* at 426 (citing Dep't of Legis. Servs., *Fiscal Note*, House Bill 940 (1985 Session)) (footnote deleted).

In summary, *Neal*, and *Marks-Sloan* lay out the process in Maryland for filing a tort action against a county board employee that is required by CJ § 5-518, which is worth repeating here:

(1) A suit may be brought directly against a board employee;

(2) A county board of education *must* be joined as a party to an action against a county board employee who has committed a tortious act or omission within the scope of his or her employment;

(3) A judgment may then be entered against both the employee and the county board of education; *but*

(4) where the judgment is based upon a negligence claim (as opposed to a claim alleging malice or gross negligence), the judgment may only be levied and executed against the board.

*Neal*, 467 Md. at 417, 422; *Marks-Sloan*, 428 Md. at 28–29. As we explain below, our Maryland statute is entirely consistent with the Coverdell Act and is not preempted by that federal law.

27

### B. The Coverdell Act Does Not Preempt State Law

The Court of Special Appeals held that "the federal Coverdell Act immunity applies and preempts the teachers' state statutory right to indemnification under CJ § 5-518." *Gambrill*, 252 Md. App. at 356. The Court of Special Appeals interpreted the plain language of the liability provisions of the Coverdell Act, 20 U.S.C. § 7946(a), as providing teachers with *immunity from suit.* *Gambrill*, 252 Md. App. at 355–56. Because the intermediate appellate court interpreted the Coverdell Act as providing teachers with immunity from suit, the court concluded that CJ § 5-518 was preempted by the federal statute because the state statute provided less protection in the form of indemnification.

We disagree with the Court of Special Appeals' conclusion that the Coverdell Act provides teachers with immunity from suit. Starting with the plain language of the Act, we note that there is nothing in the text of the Act to indicate that teachers are immune from suit. Rather, the Act is couched in terms of a teacher's *liability* and *liability protection.* *See* 20 U.S.C. § 7946(a) (stating that "except as provided in subsection (b), no teacher in a school shall be *liable for harm* caused by an act or omission of the teacher" where certain conditions apply). (Emphasis added). Liability for damages and immunity from suit, of course, are distinct legal concepts. We determine that under the plain language of the Coverdell Act, it does not provide teachers with immunity from suit. Rather, it provides teachers with protection from being liable for money damages for the harm they cause through negligent acts. We further observe that federal courts and other state appellate courts have interpreted the statute in the same manner. *See*, *e.g.*, *Dennis v. Bd. of Educ. of Talbot County*, 21 F. Supp. 3d 497, 502 (D. Md. 2014) (agreeing with the plaintiffs that the

28

Coverdell Act does not "protect[] the individually named [d]efendants from suit in their individual capacities[]"); *Steffan v. Smyzer by and through Rankins*, 540 S.W.3d 387, 392 (Ky. 2018) (concluding "that based on the plain statutory language, the act provides an exemption from liability rather than immunity from suit[]").

Second, in its preemption analysis, the intermediate appellate court did not discuss subsection (b), which creates an express "exception" to the teacher liability provisions set forth in subsection (a), for "[a] state law that makes the school or governmental entity liable for the acts or omissions of its teachers to the same extent as an employer is liable for the acts or omissions of its employees." 20 U.S.C. § 7946(b)(2). We determine that CJ § 5-518 fits squarely within the exception to the Coverdell Act set forth in this subsection. CJ § 5-518 expressly provides that teachers "[are] not personally liable for damages resulting from a tortious act or omission[,]" and requires that the school board be joined as a party and indemnify the teacher if a judgment is entered against the teacher on a negligence claim.

To summarize, reading provisions of the federal and state statutes together, we hold that Maryland has enacted a statute—CJ § 5-518—that "limit[s] teacher liability" by "mak[ing] the school or governmental entity liable for the acts or omissions of its teachers to the same extent as an employer is liable for the acts or omissions of its employees." 20 U.S.C. § 7946(b)(2). Where a state enacts such a law, the Coverdell Act expressly provides that the law "shall not be construed as [being] inconsistent with this section." 20 U.S.C. § 7946(b). The Maryland statute specifically states that a school board employee "is not personally liable for damages resulting from a tortious act or omission[,]" for which the county board is liable. CJ § 5-518(e). The statute further *requires* that the school board be

29

joined as a party and indemnify the employee for any money judgment arising from negligent acts or omissions within the scope of employment. The employee's lack of personal liability for money damages, and the school board's concomitant liability for the acts and omissions of its employees, is evident not only from the plain language of the statute, but also from the legislative history which this Court examined in *Marks-Sloan* and *Neal*. We determine that CJ § 5-518 fits within the exception set forth in 20 U.S.C. § 7946(b)(2). Accordingly, we hold the Coverdell Act is not in conflict with, nor does it preempt CJ § 5-518.[16]

---

[16] We further determine that the intermediate appellate court's interpretation of the Coverdell Act as providing teachers with categorical teacher immunity from suit would be impossible to apply where the complaint includes alternative counts alleging intentional torts or gross negligence and negligence. As previously noted, the Act does not apply where the teacher's conduct involves intentional torts or gross negligence. *See* 20 U.S.C. § 7946(a)(4) (excluding from the liability protections harm that is "caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher[]"). As we have observed, "a fine line exists between allegations of negligence and gross negligence." *Barbre v. Pope*, 402 Md. 157, 187 (2007). Oftentimes, a party will allege alternative counts of gross negligence or an intentional tort, as well as negligence. *See, e.g.*, *Neal*, 467 Md. at 408 (pointing out that the students brought four intentional tort claims, two constitutional claims, as well as claims for negligence). Where the claims survive summary judgment and proceed to a jury verdict, the employee would not be personally liable for a judgment on the negligence count but would be liable for a judgment based upon gross negligence. The Coverdell Act does not prohibit a teacher from having a seat at the defense table—it simply precludes a teacher from being personally liable for harm caused by the teacher's negligent acts or omissions under certain circumstances as outlined in the Act. In this sense, the Act is no different from CJ § 5-518. Both statutes insulate the teacher from personal liability for money damages arising from negligent conduct undertaken in the scope of employment.

30

*C.*    ***The Gambrills' Negligence Claims Do Not Fall Within the Educational Malpractice Doctrine***

Having determined that the Coverdell Act does not preclude the Gambrills' negligence claims, we turn to the lower courts' legal conclusion that the claims against the school board are barred by the educational malpractice doctrine that we recognized in *Hunter v. Board of Education of Montgomery County*, 292 Md. 481, 487 (1982).

The educational malpractice doctrine applies when a court is "asked to evaluate the course of instruction . . . [and] is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution." *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (quoting *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 90 (N.Y. 1982) (alterations in *Ross*)). Courts have described such actions as a "project that the judiciary is ill equipped to undertake." *Gupta v. New Britain General Hosp.*, 687 S.2d 111, 119 (Conn. 1996) (citations omitted). "Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached." *Id.* (citations omitted). For this reason, courts have almost universally held that claims of "educational malpractice" are not cognizable. *Id.* Stated another way, courts have declined to recognize a cause of action or claims regarding the quality of education provided by an educational institution. *Hunter*, 292 Md. at 487; *see also Gurbani v. Johns Hopkins Health Systems Corp.*, 237 Md. App. 261, 293 (2018) (observing that there is "a broader body of case law that overwhelmingly favors judicial deference to academic decisions at all levels of education").

31

In *Hunter*, this Court considered whether an action "can be successfully asserted against a school board and various individual employees for improperly evaluating, placing or teaching a student." 292 Md. at 483. A trial court concluded that the Hunters, two parents suing on behalf of their minor child, could not maintain such an action. *Id.*

The Hunters alleged that their child developed learning deficiencies because the local school system negligently evaluated his abilities and required him to repeat first-grade materials while he was physically placed in the second grade. *Id.* at 483–84. Although they raised multiple theories for the source of an alleged duty, the "gravamen" of their claim "sound[ed] in negligence, asserting [a right to] damages for the alleged failure of the school system to properly educate" the child. *Id.* at 484. The specific "injury" claimed was the child's inability to read and write. *Id.* at 485.

This Court observed that "so-called 'educational malpractice' claims" had been "unanimously rejected" in other jurisdictions based on "considerations of public policy[.]" *Id.* at 484 (collecting cases). We identified three main considerations underlying those decisions: (1) "the absence of a workable rule of care against which the defendant's conduct may be measured"; (2) "the inherent uncertainty in determining the cause and nature of any damages"; and (3) "the extreme burden which would be imposed on the already strained resources of the public school system to say nothing of those of the judiciary." *Id.* Upon review of those cases, this Court concluded that "an award of money damages . . . represents a singularly inappropriate remedy for asserted errors in the educational process." *Id.* at 487. This Court emphasized that the "misgivings" other courts had expressed about

32

"the establishment of legal cause and the inherent immeasurability of damages" in an educational negligence action "are indeed well founded." *Id.* at 487–88.

In declining to recognize a claim for educational malpractice, this Court reasoned that the recognition of such an action "would in effect position the courts of this State as overseers of both the day-to-day operation of our educational process as well as the formulation of its governing policies." *Id.* at 488. This Court was reluctant to impose such a responsibility on the courts. *Id.*[17]

Here, the Board contends that the Gambrills' negligence claims focus on student discipline,[18] which the Board asserts is an integral part of the educational process

---

[17] Since this Court's decision in *Hunter*, we and the Court of Special Appeals have applied the educational malpractice doctrine to preclude plaintiffs from bringing claims based upon academic decision-making. *See Doe v. Bd. of Educ. of Montgomery County*, 295 Md. 67 (1982) (concluding that the claims made by a former student against the defendants were based upon negligent evaluation and educational placement of the student in the school system, which amounted to claims for educational malpractice); *Gurbani v. Johns Hopkins Health Systems Corp.*, 237 Md. App. 261 (2018) (upholding the circuit court's entry of summary judgment on a physician's negligence claim against a university based upon the university's decision to end her involvement in its medical residency program because the decision resulted from the exercise of professional judgment); *Tabor v. Baltimore City Public Schools*, 138 Md. App. 747, 751 (2001) (upholding the circuit court's dismissal of a case involving a disabled child's complaint alleging that the city school board did not provide him with special education services, pointing out that Maryland does not recognize a tort action seeking damages based on negligent education); *Alban v. Bd. of Educ. of Harford County*, 64 Md. App. 169 (1985) (upholding directed verdict in favor of a school board and a teacher where the parents of a handicapped child brought an action to recover for injuries sustained by the child in physical education class where the parents alleged that the defendants were negligent in placing the child in a regular physical education class with no special safeguards to protect the child from injury).

[18] The Board and the intermediate appellate court characterize the Gambrills' claims as relating to "student discipline" matters. *Gambrill*, 252 Md. App. at 361–62. We do not view the Gambrills' claims through such a narrow lens. The claims encompass more than simply a failure to take appropriate disciplinary measures—rather, the averments in the

33

encompassed by *Hunter* and that the Gambrills are asking this Court to wade into the murky waters of adolescent interpersonal disputes. The Gambrills respond that the claims are not based on educational malpractice or educational negligence but rather are solidly rooted in the tort of negligence. We agree with the Gambrills.

The Gambrills are not alleging claims based upon educational placement or academic decisions that were made concerning S.'s educational needs. Instead, they allege that the school employees and their employer had a duty to use reasonable measures to protect S. while on school grounds, including supervising students and taking precautions to protect S.'s physical safety. We have not applied the educational malpractice doctrine to claims that were not based upon educational placement or pedagogical decisions and decline to expand the doctrine to cover the negligence claims asserted by the Gambrills in this case.

We determine that the policy reasons against recognizing a cause of action for educational malpractice, as set forth in *Hunter*, are not present here. Concerning the first justification—the lack of a satisfactory standard of care against which a teacher or administrator's conduct may be measured—the standard is the same as any other negligence case: that degree of care and skill which is expected of a reasonably competent teacher or administrator acting under the same or similar circumstances. Stated another way, when determining whether the school employees and their employer breached the

complaint repeatedly assert that the defendants failed to "properly supervise" students at Mace's Lane. According to the Gambrills, the lack of supervision resulted in students physically assaulting S. on several occasions.

34

applicable standard of care, the analysis of the duty of care does not require an inquiry into pedagogical methods, the quality of the schools' educational program or curriculum, or an evaluation of S.'s progress or achievement.

The second reason for refusing to recognize a claim of educational malpractice is the "inherent uncertainty in determining the cause and nature of any damages." *Hunter*, 292 Md. at 484. Here, the Gambrills allege damages that include compensation for physical and mental injury. These damages do not involve "inherent uncertainty" arising from academic placement or pedagogical decisions. Here, they are customary damages that are computed by judges and juries in many tort cases.

As for the third justification—the extreme burden which would be imposed on the already strained resources of the public school system, *id.*—we similarly conclude that such a rationale should not form the basis for this Court to extend common law immunity to traditional negligence claims against school boards and their agents that are not based upon academic decisions. The Maryland Legislature, as a policy matter, has decided that local school systems may be liable for negligent acts and omissions of their employees arising within the scope of employment, at least to the amount of $400,000. *See* CJ § 5-518(b)– (c). We decline to expand the application of the educational malpractice doctrine in a manner that would be at odds with the Legislature's decision to hold school boards liable for negligent acts and omissions of their employees involving student supervision that are untaken within the employees' scope of employment. For these reasons, we hold that the Gambrills' negligence claims do not fall within the scope of the educational malpractice doctrine.

***D. Taking the Evidence in the Light Most Favorable to the Gambrills, the Circuit Court Erred in Granting Summary Judgment in Favor of the Defendants on the Gambrills' Negligence Claim***

Having determined that there is neither a statutory nor a common law impediment that would preclude a plaintiff from filing a negligence claim against a school board and its employees for negligent supervision, we turn to the claims that the Gambrills have asserted in their complaint, and the summary judgment pleadings and exhibits considered by the circuit court in connection with its summary judgment ruling. However, before we turn to the specific allegations, and because we are remanding this matter to the circuit court for further proceedings, we determine that it is useful to reiterate the common law negligence principles that are set forth in our case law, including cases involving negligence claims arising from negligent supervision of students in schools.

"In a negligence action, a plaintiff bears the burden of proving: 1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 727 (2020). To survive a motion for summary judgment, a plaintiff must show evidence on each element that is sufficient to permit a trier of fact to find in his or her favor.

With respect to the first element, it is undisputed that a school has a duty "to exercise reasonable care to protect a pupil from harm." *Lunsford v. Bd. of Ed. of Prince George's County*, 280 Md. 665, 676 (1977) (citing *Segerman v. Jones*, 256 Md. 109, 123–24 (1969)). This Court has recognized "the doctrine that the relation of a school vis a vis a pupil is

36

analogous to one who stands in *loco parentis*, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm." *Eisel v. Bd. of Educ. of Montgomery County*, 324 Md. 376, 384 (1991) (quoting *Segerman*, 256 Md. at 123–24).

Of course, simply establishing a duty does not establish a negligence claim. In determining whether there was a breach of duty, we recognize that a teacher is not an insurer of safety of students, but rather, he or she is "held only to the standard of the reasonable care exercised by a person of ordinary prudence." *Segerman*, 256 Md. at 125. In many instances involving negligence claims against teachers and administrators, the plaintiffs' claim will rise or fall on the issue of foreseeability. In *Segerman*, this Court relied upon jurisprudence from the State of New York in considering claims against a teacher for negligent supervision. 256 Md. 109. In this case, we similarly find the New York appellate courts' analysis of foreseeability to be instructive:

> Schools have a duty to provide supervision to ensure the safety of those students in their charge and are liable for foreseeable injuries proximately caused by the absence of adequate supervision. In determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated. Injuries caused by the impulsive, unanticipated act of a fellow student ordinarily will not give rise to negligence on the part of the School District absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act.

*Buchholz v. Patchogue-Medford Sch. Dist.*, 88 A.D.3d 843, 844 (N.Y. App. Div. 2011) (internal quotation marks and citations omitted). In that case, a student was assaulted by two other students in a hallway. The court held that, because the school district had no

knowledge of prior violent conduct by the two students, it could not have reasonably foreseen the attack on the plaintiff. *Id.* Accordingly, the school district was entitled to summary judgment on a claim of negligent supervision. *Id.* at 846.

In another case, a gym teacher witnessed the start of a fight. The court concluded that summary judgment was not appropriate because there was "an issue of fact as to whether the plaintiff's injuries were a foreseeable consequence of the teacher's alleged failure to respond appropriately as the events unfolded in front of him." *Siller v. Mahopac Cent. Sch. Dist.*, 18 A.D.3d 532, 533 (N.Y. App. Div. 2005).

Even assuming that the tortious conduct was foreseeable, a plaintiff must also establish that the negligence was a proximate cause of the student's injuries. "It is a basic principle that negligence is not actionable unless it is a proximate cause of the harm alleged." *Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009) (internal citations omitted). "Proximate cause 'involves a conclusion that someone will be held legally responsible for the consequences of an act or omission.'" *Id.* at 243 (quoting *Peterson v. Underwood*, 258 Md. 9, 16 (1970)). To be a proximate cause of an injury, "the negligence must be 1) a cause in fact, and 2) a legally cognizable cause." *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 156–57 (1994) (internal citations omitted).

Causation-in-fact concerns the threshold inquiry of "whether [the] defendant's conduct actually produced an injury." *Peterson v. Underwood*, 258 Md. 9, 17 (1970). Two tests have been developed to determine if causation-in-fact exists: (1) the "but for" test; and (2) the "substantial factor" test. *Collins*, 409 Md. at 244. The "but for" test applies in cases where only one negligent act is at issue. *Id.* In other words, "causation-in-fact is

38

found when the injury would not have occurred absent or 'but for' the defendant's negligent act." *Id.* When two or more independent negligent acts bring about an injury, the "substantial factor" test controls. *Id.* "Causation-in-fact may be found if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the plaintiff's injuries." *Id.*[19]

Once it is established that a defendant's conduct is, in fact, one of the causes of the plaintiff's injury, the second analysis turns on whether the defendant should be legally

---

[19] This Court has adopted the substantial factor test set forth in the Restatement (Second) of Torts. *Pittway Corp. v. Collins*, 409 Md. 218, 244 (2009); *see also Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 208–09 (1992). Section 431 of the Restatement (Second) of Torts reads as follows:

> The actor's negligent conduct is a legal cause of harm to another if
>
> (a) his conduct is a substantial factor in bringing about the harm, and
>
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

Section 433 of the Restatement (Second) of Torts provides:

> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
>
> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>
> (c) lapse of time.

responsible for the injury. The distinction between causation-in-fact and legal causation is not always a simple one. *See* W. Page Keeton, Prosser & Keeton on Torts § 42 (5th ed. 1984). "This part of the causation analysis requires us to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Collins*, 409 Md. at 245; *see also Stone v. Chicago Title Ins.*, 330 Md. 329, 337 (1993). This Court has characterized legal causation as "a policy-oriented doctrine designed to be a method for limiting liability after caus[ation]-in-fact has been established." *Collins*, 409 Md. at 245 (footnote omitted); *see also,* Prosser & Keeton, § 42 at 273 ("Legal causation" depends "essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred."). For this reason, the question of legal causation "most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct." *Collins*, 409 Md. at 246; *see also Henley v. Prince George's County*, 305 Md. 320, 336 (1986) (observing that "[f]oreseeability as a factor in the determination of the existence of a duty involves a prospective consideration of the facts existing at the time of the negligent conduct. Foreseeability as an element of proximate cause permits a retrospective consideration of the total facts of the occurrence, including the criminal [or tortious] acts of a third person occurring after the original act of negligence of a tortfeasor[]").

In *Henley v. Prince George's County,* 305 Md. at 334, Judge McAuliffe discussed the test of foreseeability and legal causation as follows:

> In applying the test of foreseeability . . . it is well to keep in mind that it is simply intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm, and to

40

avoid the attachment of liability where, in the language of Section 435(2) of the Restatement (Second) of Torts (1965), it appears 'highly extraordinary' that the negligent conduct should have brought about the harm.

Stated another way, the defendant may not be liable if it appears highly extraordinary and unforeseeable that the plaintiff's injuries occurred as a result of the defendant's alleged tortious conduct. *See* Restatement (Second) of Torts, § 435(2) (stating "[t]he actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm[]").

In *Segerman v. Jones*, 256 Md. 109 (1969), this Court considered a negligence claim against a teacher where the teacher left her elementary school classroom for a few minutes while her students performed calisthenic activities. During the teacher's absence, a student performed an activity improperly, and kicked the head of another student, causing the student to fall forward, strike her mouth on the floor, and causing her teeth to come out. *Id.* at 116–17. The injured student's parents filed suit, alleging that the teacher was negligent in leaving the classroom and that her failure to supervise the exercises was the proximate cause of the student's injury. *Id.* at 121. After the jury returned a verdict in the plaintiff's favor, this Court reversed the judgment. This Court held that, even assuming that the teacher was negligent in leaving the room, her absence or failure to supervise was not the proximate cause of the injury because her "presence could not have prevented it, and liability could be imposed only if the injury was reasonably foreseeable." *Id.* at 123. In the Court's view, the proximate cause of the student's injury "was an intervening and

41

wholly unforeseen force," *i.e.*, the other student's failure to perform the exercises as instructed. *Id.*

Although the Court determined that, under the facts of the case, as a matter of law, the student's injuries were unforeseeable, this Court made some additional observations on teachers' liability in the context of negligent supervision. After reviewing case law from other jurisdictions, this Court observed that "[i]f a rule can be developed from the teacher liability cases, it is this: a teacher's absence from the classroom, or failure properly to supervise students' activities, is not likely to give rise to a cause of action for injury to a student, unless under all the circumstances[,] the possibility of injury is reasonably foreseeable." *Id.* at 130–31. We stated: "The point is that a teacher could be liable to an injured student, whether or not the teacher could have prevented the injury, if the injury is a reasonably foreseeable consequence of absence or failure to supervise." *Id.* at 131. "Under such circumstances, the intervening force does not become a superseding cause which breaks the chain of causation, but become[s] a part of the original tort." *Id.* (citing Prosser, Torts § 51 (3d ed. 1964) at 309; Restatement (Second) of Torts §§ 440, 441, 447 (Am. Law Inst. 1965)).

We also embraced the test of foreseeability articulated by the Supreme Court of Washington in the context of a case filed against a school district by a girl who was attacked in an unlit room:

> The harm which came to [the student] was not caused by the direct act or omission of the school district, but by the intervening act of third persons. The fact that the danger stems from such an intervening act, however, does not of itself exonerate a defendant from negligence. If, under the assumed

42

facts, such intervening force is reasonably foreseeable, a finding of negligence may be predicated thereon.

*Id.* at 132 (quoting *McLeod v. Grant County School Dist. No. 128*, 255 P.2d 360, 363 (Wash. 1953)).

We further observed that this Court had adopted "substantially the same rule":

If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.

*Segerman*, 256 Md. at 132–33 (quoting *State ex rel. Schiller v. Hecht Co.*, 165 Md. 415, 422 (1933)). Or stated another way,

the universally accepted rule as to the proximate cause is that, unless an act, or omission of a duty, or both, are the direct and continuing cause of an injury, recovery will not be allowed. The negligent acts must continue through every event and occurrence, and itself be the natural and logical cause of the injury. It must be the natural and probable consequence of the negligent act unbroken by any intervening agency, and where the negligence of any one person is merely passive, and potential, while the negligence of another is the moving and effective cause of the injury, the latter is the proximate cause and fixes the liability.

*Id.* (quoting *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 387 (1941)).

We do not impose upon teachers and school systems the duty to anticipate or foresee the hundreds of unexpected student acts that occur daily within our public schools. At the risk of stating the obvious, the foreseeability analysis in these cases is dependent upon the facts and circumstances of the particular case. Although the question of foreseeability will

43

often be an issue for the jury or trier of fact, that is not always the case. *See*, *e.g.*, *Segerman*, 256 Md. at 134 (determining that the injury was unforeseeable as a matter of law because the teacher "had no reason to apprehend that any of the children would leave his [or her] assigned place or that any of the children would perform the exercises improperly[]"). In a similar vein, although proximate cause is usually a jury question, it can be decided by a court as a question of law when reasoning minds cannot differ. *Id.* at 135 (determining that no one could conclude that the teacher's absence was the proximate cause of the student's injury).

Returning to the Gambrills' case, we ordinarily affirm the entry of summary judgment only upon the grounds on which the trial court relied in granting summary judgment. *Newell*, 407 Md. at 608. Here, the circuit court ruled that the Gambrills' claims were barred by the Coverdell Act and the educational malpractice doctrine. The circuit court then addressed the merits of the Gambrills' claim and stated:

> No reasonable jury could conclude that the Defendants were negligent in supervising [S.] and other students at Mace's Lane [Middle School]. . . . [N]o reasonable jury could find that the . . . Defendant Board . . . breached [its] duty to protect her from foreseeable harm. I conclude . . . that a cause of action here would create that [sword] of Damocles hanging over the heads of well-intentioned educators who are tasked with the job of resolving peer disputes among adolescents.

> Again, I find that there is, not just an absence of evidence to support the allegations that the Defendants failed to adequately respond to, investigate, and prevent reasonably foreseeable harm to [S.], it's to the contrary, the evidence shows that the Defendants responded and took action in response to the allegations of [S.'s] family.

> I'm not sure if it amounts to contributory negligence or assumption of the risk, I'm not clear on that point, but the record does establish that at times [S.] was engaging her classmates and that she was involved in altercations with other students that could have contributed to the situation. Very much

like the case law cited by defense counsel that ameliorated liability on behalf of the school board in other cases.

Taking the evidence in the light most favorable to the Gambrills, as we are required to do at this stage, we cannot say that "no reasonable jury could conclude that the Defendants were negligent in their supervising S. and the other the students" over the 2016–2017 school year when it came to S.'s safety and the physical assaults that she endured. The negligent acts in question do not involve one isolated incident, as was the case in *Segerman*. Rather, the Gambrills contend that the Respondents' negligent acts and omissions involved several incidents over the span of many months.

We do not determine, based upon this record, that there are no genuine disputes of material fact and that the Respondents are entitled to judgment as a matter of law for the reasons stated by the circuit court in its ruling. By way of some examples, the Gambrills contend that in the Fall of 2016, shortly after the bullying started, they asked for S.'s locker to be moved to separate her from the students who were harassing her, and the administration refused the initial request. S.'s locker was not moved until January 2017. S. contends that, during an early assault, in the presence of Substitute Teacher 1, the assault lasted over one minute, she screamed during the incident and the teacher failed to intervene. During the assault that occurred in the presence of Substitute Teacher 2, the teacher did not intervene because he had placed his head on the desk as the result of a headache. There appear to be factual issues (which were not discussed by the circuit court) concerning the span of time involved in each of the assaults and whether the substitute teachers could have reasonably intervened to prevent S.'s injuries.

Concerning the events that gave rise to the assault of S. in the nurse's office on December 19, S. contends that Ms. Woolford was aware that S. was in the nurse's office when she escorted Student 8 to the nurse's office and left him alone with S. This was not the first altercation between Student 8 and S. A week earlier, Student 8 and S. were involved in an altercation that left S. with a concussion. To be sure, the Respondents dispute the facts as alleged by S. However, the circuit court did not address these facts in making its ruling. Nor did the circuit court make any findings concerning whether it would have been foreseeable that S. and Student 8 might have gotten in a second altercation if S. and Student 8 were left alone in the nurse's office as the Gambrills contend.

The circuit court judge further stated that S. was contributorily negligent or assumed the risk of her injuries. Questions of whether a plaintiff was contributorily negligent or assumed the risk are ordinarily ones that should be answered by the finder of fact, rather than the court. *Kasten Constr. Co. v. Evans*, 260 Md. 536, 541 (1971). S. states in an affidavit that she did not instigate the bullying. The Gambrills assert that they complained and expressed their concerns to Ms. Woolford on multiple occasions and that neither Ms. Woolford nor the other employees took reasonable steps to keep S. safe. The evidence presented by the Respondents demonstrates that the Respondents took steps to address the Gambrills' concerns about S.'s safety, and there is evidence in the record that would indicate that S. may have acted in a manner that caused her peers to react to her in an adverse manner. However, based upon our review of the record, we cannot say that there are no material disputes of fact and that all the Respondents were entitled to judgment as a matter of law for the limited reasons stated by the circuit court in its ruling from the bench.

46

# V

## Conclusion

For the reasons stated herein, we hold:

1.      The Coverdell Act does not preempt CJ § 5-518, and the Gambrills' negligence claims against the individual school employees were not preempted by federal law;

2.      The educational malpractice doctrine does not apply to the Gambrills' claims alleging negligent supervision; and

3.      There are material disputes of fact that precluded the entry of summary judgment in favor of all the Respondents for the limited reasons stated by the circuit court in its ruling from the bench.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. THE CASE REMANDED TO THE CIRCUIT COURT FOR DORCHESTER COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT BY THE RESPONDENTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/34a21cn.pdf